# Reiter-Connolly Mfg. Co. *v.* Hamlin as Admr.

*Action by Administrator for Damages for Death of Employee.*

[DECIDED FEB. 1, 1906. 40 So. REP. 280.]

1. *Master and Servant; Injuries to Servant; Sufficiency of Complaint.*—A count in a complaint for the negligent death of an employe, which alleges that prior to and at the time of the

[Reiter-Connolly Mfg. Co. v. Hamlin as Admr.]

killing intestate was an employe of defendant corporation, and was engaged in the duties of his employment; that his death was caused by the negligence of a named superintendent while in the exercise of such superintendence; that the negligence consisted in the superintendent negligently causing a chain to be slackened which held a block, under which intestate was engaged in the discharge of the duties of his employment, and which fell by reason of the negligent slackening of the chain, killing intestate, sufficiently states all the facts necessary to constitute negligence, and is not subject to demurrer.

2. *Same.*—A count in a complaint for the negligent death of an employe, which states the relations of intestate and defendant, and alleges that intestate's death resulted from an act of some person in the employ of defendant, describing the act, and alleging that such act was done in obedience to particular instructions from one R. who was delegated with the authority of defendant, and that such instructions were negligently given, is sufficient, without stating the name of the person whose act, done in obedience to negligent instructions, caused intestate's death.

3. *Same.*—A count in a complaint for the negligent killing of an employe, which alleges that plaintiff's intestate, at the time of the killing, was in the employ of defendant and engaged in the discharge of the duties of his employment; that the injuries complained of were caused by the act of some person on the employ of defendant, in slackening a chain, the pressure of which held a block, under which plaintiff's intestate was, at the time, engaged in the duties of his employment, whereby the block was loosened and fell upon the intestate killing him; and that the act of slackening the chain was done in obedience to particular instructions negligently given by one R., a person delegated with the authority of defendant in that behalf, sufficiently states a cause of action under § 1749, Subd. 2, Code 1896.

4 *Pleading; Conclusions of Fact; Negligence.*—It is not necessary to aver in what particular the orders or directions were negligent, in an action counting on injuries resulting from orders negligently given by defendant's representative.

5. *Master and Servant; Risks; Concurrent Negligence.*—The fact that an employe was killed while in the discharge of his duties after having been warned about the dangers of the particular position he was in at the time he was killed, will not defeat a recovery where the injury resulted not from the ordinary danger, but from the negligence of the superintendent of the defendant.

131

[Reiter-Connolly Mfg. Co. v. Hamlin as Admr.]

6    *Death; Damages; Earning Capacity.*—The wages received by deceased at the time of his death, are a proper element of damages in an action for damages for death of intestate.

7.    *Evidence; Conclusion of Witness.*—It was not error to allow a witness to state what appreciable time elapsed from the giving of the order to slacken the chain until deceased was struck, and whether deceased had time to get away, it being a statement of collective facts, easier for the witness who saw the occurrence to state than for the jury to arrive at by a mathematical calculation from a statement of all the facts and circumstances.

8.    *Master and Servant; Injury to Servant; Contributory Negligence; Evidence.*—It was error to exclude evidence that there was a safe way of doing the work plaintiff's intestate was engaged in at the time of the injury, and that had he followed such way, would have escaped injury, under a plea of contributory negligence setting up such facts.

9    *Death; Measure of Damages.*—The measure of damages for death of an employe by negligence, is that which gives such a sum as being put to interest, will each year, by taking a part of the principal and adding it to the interest, yield the amount of deceased's yearly contribution to his family, less his personal expenses, and so that the whole remaining principal, at the end of deceased's expectancy of life, added to the interest on this balance for that year will equal the amount of his yearly contribution to his family, less his personal expenses (a table at rate of 8 per cent interest is given in the opinion.)

10.    *Death; Damages.*—In a case where deceased had no dependents, the measure of damages, is such a sum as at legal interest would produce, at the expiration of the expectancy of deceased, an amount equal to his probable net earnings, during that period, based upon the amount of his net earnings before, as shown reasonably from the evidence.

11.    *Death; Damages; Excessive Verdict.*—Under either of the foregoing rules as to measure of damages, the verdict in this case is held to be excessive, it being shown that deceased's expectancy was 40 years, that he sent his parents from $15 to $20 per month, and saved no money.

12.    *Administrators; Assets Authorizing Appointment.*—A claim for damages for death resulting from the negligence of a third person is an asset sufficient to authorize the appointment of an administrator.

13.    *Same; Appointment; Collateral Attack.*—Whether the appointment of an administrator is invalid or not, cannot be collaterally inquired into.

14. *Witnesses; Evidence of Inconsistent Statements.*—Where one
    heard one or the other of two witnesses make a statement
    different from his testimony, and cannot say which one, it
    is improper to allow testimony concerning such contradictory
    statement for the purpose of impeachment.

15. *Trial; Instructions; Construed as a Whole.*—Where objection is
    taken to a part of the charge of the court, such part must
    . be construed in connection with the whole charge, and no
    error appearing when so construed the case will not be re-
    versed.

, 16. *Same; Withdrawal of Instructions.*—Instructions erroneously
     given, if withdrawn from the jury before they retire, are
     harmless and will not work a reversal.

17. *Negligence; Instructions; Contributory Negligence.*—A charge
    which instructs the jury that "if deceased by pursuing a dif-
    ferent course might have escaped injury, this does not make
    him guilty of contributory negligence—the proper inquiry
    is concerning his surroundings at the time, did he exercise
    such reasonable care for his own safety as would be expected
    of an ordinary prudent man?" in the case at bar, was proper,
    it being equivalent to the hypothesis, "one similarly situ-
    ated."

18. *Same.*—A charge instructing the jury that if they are satisfied
    that deceased knew that the block would probably fall upon
    the chain being slackened, and knew that when the column
    rested on its base the chain would probably slacken, and he
    remained under said block after one side of the base of
    the column had landed on the pier, for a sufficient length of
    time to have gotten out from under the block, until he was
    struck by the block and killed, the plaintiff cannot recover,
    was properly refused as failing to hypothesize that he re-
    mained under it after knowledge of the fact that the chain
    had been slackened, and upon the finding as a fact by the jury
    that the block fell by reason of the fact that the chain was
    loosened by the column resting upon its base.

19. *Same.*—Instructions misleading in their tendencies, or which
    improperly place the burden of proof as to contributory negli-
    gence are properly refused.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

This is an action for damages on account of the death
of appellee's intestate, who was an employe of appellant,
and the original complaint contained six counts. De-
murrers were sustained to all of these counts, and the

complaint was amended by filing an amended count number five and adding count seven, eight and nine. Demurrers were interposed to the amended count and was sustained to all the counts except five and nine, and overruled as to these. The complaint was further amended by adding counts 10, 11, and 12. Demurrers were filed to these last counts and the demurrers overruled. Counts 5 and 11 were abandoned, and the cause was tried on counts 9, 10 and 12. The 9th count was in the following words: "The plaintiff who sues as the administrator of the estate of James Williams deceased claims of the defendant corporation the further sum of $10,000 as damages for the negligent killing of plaintiff's intestate in Etowah county, Alabama, on towit, September 1, 1903; and plaintiff avers that at and prior to the time of said killing, his intestate was in the employ of defendant corporation, and was engaged in the performance of his duties as such employe of defendant corporation, and the injury complained of was caused by reason of the negligence of one Al Riter, a person in the service or employment of defendant, who had superintendence intrusted to him and while in the exercise of such superintendence, said negligence complained of consisted in this; that said Al Riter, while in the exercise of such superintendence negligently caused a chain to be slackened while plaintiff's intestate in discharge of his duties was under a block which was held by the pressure of said chain whereby the block was loosened and fell upon plaintiff's intestate and killed him." Count 10 was in the following words: "Plaintiff who sues as the administrator of the estate of James Williams deceased, claims of the defendant corporation the further sum of $10,000 as damages for the negligent killing of plaintiff's intestate by defendant in Etowah county, Alabama, on towit, September 1, 1903. And plaintiff avers that at and prior to the happening of the injuries complained of, plaintiff's intestate was in the service or employ of defendant corporation and was engaged in the performance of his duties as such employe of defendant corporation, and the injury complained of was caused by reason of the act of some person in the service or employment of defendant corporation in slackening a chain while plaintiff's in-

testate in the discharge of his duties was under a block which was held by the pressure of said chain whereby the block was loosened and fell upon plaintiff's intestate and killed him, and plaintiff avers that said act of slackening said chain as aforesaid was done in obedience to particular instructions to slacken said chain negligently given by one Al Riter, a person delegated with the authority of the defendant in that behalf. Count 12. Plaintiff who sues as the administrator of the estate of James Williams deceased claims of the defendant corporation the further sum of $10,000 as damages for the negligent killing of plaintiff's intestate by defendant in Etowah county, Alabama, on towit, Sept. 1, 1903. And plaintiff avers that at and prior to the happening of the injuries complained of plaintiff's intestate was in the employ of defendant corporation and was engaged in the performance of his duties as such employe of defendant corporation; that under his employment it became the duty of plaintiff's intestate to set an anchor bolt at the base of a steel or iron column for the purpose of holding said column in its erect position; that in the erection of said column a block of wood had been fastened thereto by the pressure of a chain which was used in the erection of said column; that said block of wood was held in its place and prevented from falling only by the pressure of said chain; that Al Riter, a person in the service or employment of defendant corporation, had superintendence intrusted to him of the work being done by plaintiff's intestate; that said block was placed directly over plaintiff's intestate; that the performance of the duties of plaintiff's intestate required his attention; that plaintiff's intestate was in a position where the slackening of said chain would unfasten said block and cause the same to fall upon plaintiff's intestate; that the danger that said block would fall upon plaintiff's intestate and injure him, if the chain was slackened, was well known to said Riter, or by the exercise of reasonable diligence, should have been known to him; that it was the duty of said Riter in the exercise of his superintendence to use reasonable diligence to prevent the slackening of said chain, and that said Riter in the exercise of said superintendence negligently failed

to exercise reasonable care to prevent the slackening of said chain, and negligently allowed said chain to be slackened whereby said block was loosened and fell on plaintiff's intestate and killed him. And plaintiff avers that said injury proximately resulted from the negligence of said Al Riter in the exercise of said superintendence, in that he negligently failed to exercise reasonable care to prevent the slackening of said chain and negligently allowed said chain to be slackened whereby intestate was injured and killed. Defendant demurred to the ninth count, and assigned the following grounds;—1. For that it fails to give the name of the person who loosened the chain. 2. For that it does not appear that the block fell as a result of the chain being loosened. 3. For that it does not appear that the chain was used to hold the block in place. 4. For that it does not state facts showing that the chain held said block and that the loosening the chain caused the block to fall. 5. For that it is not made to appear that Al Riter had any reason to believe that the slackening of the chain would cause or allow the block to fall. 6. For that from aught that appears the chain was not used to hold the block in position, and that Al Riter had no reason to believe that the slackening of the chain would cause or allow the block to fall. 7. For that it fails to state the alleged particular instructions of Al Riter. 8. For that from aught that appears Al Riter gave only such instructions as were necessary in the performance of the work that he and the plaintiff's intestate were engaged in, all of which was well known and understood at the time plaintiff's intestate accepted such service, and that therefore the dangers he encountered were incident to such employment. 9. For that it shows that the injury complained of was caused by the act of a fellow servant. 10. For that it fails to show that Al Riter had authority to give the alleged particular instructions. 11. For that it fails to show the relation of master and servant between plaintiff's intestate and defendant except by a mere conclusion. 12. For that it fails to show that plaintiff's intestate had a contract of service with the

defendant. 13. For that it fails to show that plaintiff's intestate was engaged in the performance of his duties as such employe when he was killed, except as a mere conclusion.

Demurrers to tenth count. 1. For that it does not appear who slackened the chain. 2. For that it does not appear that Al. Riter was in the employ of defendant. 3. For that the alleged particular instructions are not stated. 4. For that from aught that appears plaintiff's intestate heard said alleged particular instructions. 5. For that it does not appear that the alleged negligent instructions were the proximate cause of the injury. 6. For that the facts constituting the negligence are not stated. Demurrers to twelfth count. 1. For that it does not appear that Al Riter's superintendence extended to seeing that said chain securely fastened said block. 2. For that it does not appear that Al Riter failed to exercise reasonable care and diligence to prevent said block from falling. 3. For that it does not appear that said Al Riter failed to exercise reasonable care and diligence to secure said block. 4. For that it does not appear that said Al Riter failed to exercise reasonable care and diligence to prevent said chain from slackening. 5. For that it does not appear that by the exercise of reasonable care and diligence Al Riter could have prevented said chain from slackening. 6. For that it does not appear that said chain was slackened by the negligence of said Al. Riter. 7. For that it does not appear what caused said chain to slacken. 8. For that it does not appear that Al. Riter superintended the fastening of said block by said chain in the erection of said iron column. 9. For that the causal connection between the alleged negligence and the inquiry is not shown. 10. For that it appears that the plaintiff's intestate had the same opportunity of ascertaining the condition of said chain and block as Al. Riter. The defendant filed the following pleas: the 1st and 2nd of which were the general issue. Plea 3. For further plea in this behalf, defendant says that plaintiff's intestate was guilty of contributory negligence which proximately contributed to his injury in that he stood immediately under said block at a place where it would likely strike him when it fell. Plea 4.

For further plea in this behalf, defendant says that the plaintiff's intestate was guilty of contributory negligence which proximately contributed to his injuries in that he stood immediately under said block at a place where it would likely strike him when it fell, when he could have stood at a place where said block would not have struck him when it fell. Plea 5. (Same as 4 down to the words "his injuries") in that he remained immediately under said block at a place where it would likely strike him when it fell after he had been warned to look out for the block. Plea 6. (Same as 4 down to the words "when it fell") after he had noticed that there was danger of the block falling. Plea 7. (Same as 4 down to the words "his injuries") in that he went and remained under said block at a place where it would likely strike him when it fell, after he had been warned to stay out from under said column, and the appliances used in raising it. Plea 8. (Same as 4 down to the words "his injuries") in that he continued to remain under said block after he had noticed that it was loose. Plea 9. (Same as 4 down to the words "his injuries") in that he negligently stood immediately under said block at a place where it would likely strike him when it fell. Plea 10. (Same as 9 down to the words "when it fell"), when he could have stood at a place where said block would not have struck him when it fell. Plea 11. Defendant says that plaintiff's intestate was guilty of contributory negligence which proximately contributed to his injuries in that he stood immediately under said block at a place where it would likely strike him when it fell after he had notice that there was danger of the block falling, when he could have stood at a place where said block could not have struck him when it fell. Plea 12. (Same as 6 down to the words "when it fell") after he had noticed that said block was loose and the consequent danger of its falling. Plea 13. (Same as 12 down to the words "when it fell") after he had notice that said chain was being slackened. Plea 14. (Same as plea 7 down to the words "when it fell") after his superintendent Al. Riter had instructed and warned him to stay out from under said column, and others being raised and the appliances used in raising them. Plea 15. (Same as 8 down to the words "he had

notice") that said chain was about to be loosed.

Demurrers were interposed to plea 3. 1st, because it failed to show that the plaintiff's intestate negligently did the things charged therein. 2nd, It does not show that he knew the chain would be slackened. 3rd, confesses that he was engaged in performance of his duties and does not show that the place where he was, was not his place of duty. 4th, the plea admits the negligent killing and that plaintiff was at his place of duty, and fails to show any negligent act on his part which proximately contributed to his injury. 5th, it does not show that he did not have the right to rely upon the chain not being slackened and allowing the block to fall while performing his duty under said block. Demurrers to fourth plea. 1. It does not show that plaintiff's intestate negligently did the things imputed to him. 2. It does not show that he knew the chain would be slackened. 3. It confesses the complaint and fails to show any negligent act which proximately contributed to his injury. 4. It confesses that he was engaged at his duty and fails to show that the place where he stood was not the place of duty. 5. It fails to show that he did not have a right to rely upon the chain not being slackened and thus allowing the block to fall while engaged at his duties under said block. 6. It fails to show any facts calling upon plaintiff's intestate in the exercise of reasonable diligence to stand at any other place then at the place at which he stood in the performance of his duties. 7. It fails to show that he could have performed his duty at a place where said block would not have struck him when it fell.

Demurrers to plea 5. 1. It does not show that he negligently did the things imputed to him. 2. It does not show that he knew that the chain would be slackened. 3. It confesses the averments of the complaint, but fails to show any negligence on his part which proximately contributed to his injury. 4. It shows that he was engaged in the performance of his duties and fails to aver that where he was was not his place of duty. 5. It fails to show that he did not have the right to rely upon the chain not being slackened and thus allow said block to fall while under said block at his duties. 6. It states

no facts calling upon him to stand at any other place than where he stood at his duties, by the exercise of reasonable diligence. 7. It fails to show that the warning to look out for the block had any reference to the slacking of the chain and the consequent falling of the block. 8. It fails to show that he had an opportunity to escape after being warned.

Demurrers to plea 6. 1. It fails to show negligence in doing the things therein charged. 2. It does not show that he knew that the chain would be slackened. Same character of demurrers were interposed to the remaining pleas, all of which were sustained. The defendant then filed a number of other pleas among which were pleas numbered 23 and 25. Plea 23 is as follows: "For further plea in this behalf, the defendant says that plaintiff's intestate was guilty of contributory negligence which proximately contributed to his injuries, in that he negligently remained immediately under said block at a place where it would likely strike him when it fell until he was so struck by said block after he had notice that said chain was being slackened." Plea 25. "For further plea in this behalf defendant says that plaintiff's intestate was guilty of contributory negligence which proximately contributed to his injuries in that he negligently continued to remain under said block at a place where it would likely strike him when it fell until he was so struck by said block after he had notice that said chain was about to be loosened. Plea 32. "For further answer to said complaint, defendant says that plaintiff's intestate was guilty of contributory negligence which proximately contributed to his injury in that he negligently remained immediately under said block at a place where it would likely strike him when it fell until he was so struck by said block after he had notice of said looseness of said block and the danger of its so falling for a sufficient length of time to have gotten out from under said block before it struck him. Demurrers were overruled to these pleas, and issue was joined upon the general issue and pleas 23, 25 and 32.

In his oral charge to the jury, which was in writing, the court used the following language: "Negligence is the wrongful doing of an act or the wrongful omission

to act, which results in damage, but without intent to do wrong or cause damage. Under this definition it is not necessary, nor does the law require than an intent to do wrong, or an intent to cause injury, should be shown." And also; "That Al. Riter was either superintendent or in the exercise of superintendence or intrusted with superintendence or that Al. Riter was delegated with authority to give the orders charged in the complaint." And also; "The evidence must reasonably satisfy you that the order to slacken was given by Al. Riter, or by some person unknown to plaintiff who had authority to give the order." And also; "If you become satisfied reasonably from the evidence that Al. Riter had charge of raising the column, that he had charge of the men, that he discharged them and employed them and had the general charge of this work and that the men employed in raising the column were under his control and that they obeyed his orders, he would be such a superintendent as is alleged in some of the counts of the complaint—so that if you become satisfied reasonably from the evidence that he was superintendent, or acting as superintendent, or having superintendence intrusted to him at the time the injury occurred or had authority intrusted to him to give orders, it becomes important for you to ascertain from the evidence whether any orders were given by Al. Riter and what they were, what was said, if anything, with reference to the block, and what if any thing was said, about the condition of the block, how the block was fastened on the column, and if after considering all the evidence, you become reasonably satisfied that Riter's attention was called to the block being too short and that he directed that the block be used and that he would keep the strain on the chain and plaintiff's intestate relying on this statement went on with his work in placing the anchor bolt through the bottom plate of the column, and Al. Riter knew or could have known by reasonable diligence that plaintiff's intestate was assisting in landing the column, and Al. Riter negligently gave the signal to slacken the chain, and the slackening of the chain loosened the block whereby it fell and killed plaintiff's intestate—defendant would be liable unless the plaintiff's intestate could have

avoided the injury in the exercise of reasonable care and diligence, or that the danger was so obvious that a reasonably prudent man would not have remained under the block." And also; "Under the law reasonable care and diligence is required at the hands of plaintiff's intestate and also exacts at the hands of the defendant the same measure of diligence and requires at their hands the use of reasonable care and diligence in preventing any one employed by them from injury, and while the law requires this reasonable care and diligence on the part of defendant, it does not exempt the person injured from the same degree of diligence and care in discharging the duty of his employment.' And also; "The notice, however, alleged in deendant's plea must have been for a sufficient length of time to have enabled the plaintiff's intestate to have gotten out from under said block before it fell, or if the plaintiff's intestate remained under the block after he had notice of the looseness of the block and the danger of its falling for a sufficient length of time to have gotten out from under said block, and avoided the injury, plaintiff would not be entitled to recover; but if the evidence reasonably satisfies you that Al. Riter while acting as superintendent and in the discharge of such superintendence said in hearing of plaintiff's intestate go on and use the block and I will keep the strain on the chain, then plaintiff would have had the right to rely upon this statement and continue his work, and if the plaintiff did engage in the duties of his employment in helping to land the column, and Al. Riter, while plaintiff's intestate was engaged in the duties of his employment, negligently gave the order to signal to slacken the chain and the chain was slackened and you further believe from the evidence that the slackening of the chain loosened the block and it fell and killed James Williams, plaintiff would be entitled to recover." And also; "Now, there is another matter which I desire to mention to you with reference to the law which requires reasonable care and diligence on the part of the party injured. It means just such care and prudence as a reasonably prudent man would exercise when similarly engaged." And also; "You will fix the measure of damages at such sum as with legal interest during the

period of expectancy of life, which is forty years would produce at its expiration a sum equal to the amount of the net earnings of the deceased during the same period, and in determining the net earnings, you have the right to look at age, probable duration of life, habits of industry, means, business, earnings, health, skill, reasonable future expectation; these are some of the matters that you have a right to consider, if in evidence before you in determining the net earnings of plaintiff's intestate." And also; "If you reasonably believe from the evidence that letters of administration have been issued to plaintiff upon the estate of James Williams deceased, then and in that event plaintiff would have the right to maintain this action and defendant would not be entitled to recover under the plea setting up that plaintiff is not administrator of said estate. And also; "Negligence is the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do or the doing of something which a prudent and reasonable man would not do. And also; "Actionable negligence consists in the neglect of the use of ordinary care and skill towards a person to whom the defendant owes the duty of observing ordinary care and skill, by which neglect plaintiff has suffered injury to his person." And also; "Contributory negligence is defined as such an act or omission on the part of plaintiff's intestate amounting to a want of ordinary care, concurring or co-operating with the negligent act of the defendant and is a proximate cause or occasion of the injury complained of." And also; "And if you believe from the evidence that the injury complained of was caused by the negligence of defendant's superintendent while he was in discharge of the duties of such superintendent, or that the injury was caused by the negligence of a person, towit, Al. Riter, who was delegated with the authority by the defendant to give the order complained of and if you believe from all the evidence that the order was negligently given and that the act of negligence charged in the complaint was the proximate cause of plaintiff's intestate's death and without any greater want of care and skill on the part of plaintiff's intestate than was reasonably to be expected

from a person of ordinary care and prudence and skill in the situation in which plaintiff's intestate found himself, the plaintiff is entitled to recover.

At the request of the plaintiff the court gave charge 2 as follows: "The court charges the jury that the servant has a right to rely on the assurance of the master, if such assurance was given, as to the safety of the machinery, appliances and place of work where the attention of the master has been called to it, unless the danger is so obvious that no prudent man would use such machinery or appliances or would work at such place or continue the performance of his duties in such place of work."

Charge 3 given for plaintiff.. "The fact, if it be a fact, that James Williams remained under the block at a place where it would likely strike him when it fell until he was struck by it, after he had notice that the chain was being slackened, would not constitute negligence on the part of said James Williams which would bar a recovery if the jury find that said James Williams had no time to get out from under the block after he had such notice.

Charge 4 given for plaintiff. The court charges the jury that the fact, if it be a fact, that James Williams, by pursuing a different course might have escaped injury, does not make him guilty of contributory negligence, the proper inquiry is, considering his surroundings at the time, did he exercise such reasonable care for his own safety as would be expected of an ordinarily prudent man.

Charge 6 given for plaintiff. The court charges the jury that if they find that plaintiff was duly appointed administrator of the estate of James Williams deceased, and that at and prior to the death of said James Williams, he was in the employ of defendant corporation and was engaged in the performance of his duties as such employe, that under his said employment it became his duty to set an anchor bolt at the base of a steel or iron column for the purpose of holding said column in its erect position; that in the erection of said column a block of wood had been fastened thereto by the pressure of a chain which was used in the erection of said col-

umn; that said block of wood was held in its place and prevented from falling only by the pressure of said chain; that Al. Riter was a person in the service or employment of defendant corporation and had superintendence intrusted to him by defendant over the erection of said column and over the work being done by said James Williams; that said block was placed directly over said James Williams, that the performance of the duties of said Williams required his attention, that said Williams was in a position where the slackening of said chain would unfasten said block and cause the same to fall upon him, that the danger that said block would fall upon and injure him if the chain was slackened was well known to said Riter, or by the exercise of due diligence should have been known to said Riter, that it was the duty of said Riter in the exercise of his said superintendence to use due diligence to prevent the slackening of said chain, that said Riter in the exercise of said superintendence negligently failed to exercise due care to prevent the slackening of said chain, and negligently allowed said chain to be slackened whereby said block was loosened and fell on said James Williams and killed him and that the death of said Williams proximately resulted from the negligence of said Riter in the exercise of said superintendence in that he negligently failed to exercise due care to prevent the slackening of said chain and negligently allowed said chain to be slackened, then the jury should find a verdict for plaintiff, unless they further find that said Williams was guilty of contributory negligence which proximately contributed to his injury.

The following charges were requested by the defendant and refused.

Charge 17. The court charges the jury that if they are reasonably satisfied from the evidence that James Williams knew that the block would probably fall upon the chain being slackened. and knew that when the column rested on its base the chain would probably slacken, and he remained under said block after one side of the base of the column had landed on the pier for a sufficient length of time to get out from under the block, until he was struck by the block and killed the plaintiff cannot

recover, and that notwithstanding Al. Riter told Williams and the gang with whom he was working that he would hold the strain on the chain.

Charge 21. The court charges the jury that if they believe the evidence in the case they must find the issue in favor of the defendant under count 12 of the complaint.

Charge 22. The court charges the jury that if from all the evidence in the case they should be unable to determine whether the injury proximately resulted from the negligence of James Williams as charged in the pleas of contributory negligence or the negligence of defendant as charged in the complaint, they must find a verdict for the defendant.

Charge 28. The court charges the jury that if they are reasonably satisfied from the evidence that Williams knew that the block was only held by the pressure of the chain and that it would probably fall when the column rested on its base and that he stood under said block till the column rested on its base when said block fell and killed him, they must find for the defendant.

Charge 31. The court charges the jury that if they are reasonably satisfied from the evidence that James Williams knew that there was great danger of the block falling and that with that knowledge he stood under the block at a place where it would strike him if it fell when he could have stood at a place known to him and equally as well performed the work which he was performing where the block could not have struck him, they must find for the defendant.

Charge 32. The court charges the jury that if they are reasonably satisfied from the evidence that James Williams knew of the danger of the block falling upon the chain being slackened, and knew that when the column rested on its base the chain would probably slacken and remained under said block after one side of the base of the column had landed for a sufficient length of time to get out from under the block until he was struck by the block and killed, plaintiff cannot recover.

Charge 33. The court charges the jury that if they are reasonably satisfied from the evidence in this case that James Williams the deceased, remained immediately

under the block at a place where it would likely strike him when it fell, until he was struck by said block after he had notice that the chain was being slackened, he was guilty of contributory negligence which proximately contributed to his injuries such as would require a verdict for the defendant.

39. The court charges the jury that if James Williams could have stood at a place where the block would not have struck him when it fell and equally as well performed his work, and if they further find that he stood at a place under the block where a reasonably prudent man would not have stood, they must find for the defendant.

There was evidence tending to support the allegations of the complaint and evidence tending to show that the plaintiff was guilty of contributory negligence. There was verdict and judgment in the sum of $5,000.

BURNETT, HOOD & MURPHREE, for appellant.—The demurrer should have been sustained to count 9, the averment therein being that the injury was caused by the negligence of Riter. This amounts to nothing more than a charge that the injury was remotely caused by Reiter. While it is not necessary that the *quo modo* of the negligence alleged be defined or set out in a complaint, yet when the pleader attempts to do so, it is necessary that the facts set out show a cause of action without the aid of conclusion.—*Mitchell's case*, 32 So. 735; *Ensley R. R. Co. v. Chewning*, 93 Ala. 24. This count was also bad for the reason that it does not appear that Reiter knew that the block was held by the pressure of the chain or that the slackening of the chain would probably cause the block to fall.—*Decatur Car wheel Co. v. Mahaffy*, 29 So. 646. Count ten was attempted to be drawn under subd. 4 of the Employer's Liability Act. It fails to name the person who slackened the chain in obedience to particular instructions. The particular instructions are not given. It does not appear that the injury proximately resulted from giving the instructions. It does not appear that these instructions were not necessary to carry on the particular work in which the deceased and others were engaged.—*R. R. Co. v. Bouldin*, 110

141

Ala. 199; *R. R. Co. v. Lamb,* 26 So. 968; *Decatur Car Wheel Co. v. Mahaffy, supra;Postal Telegraph Co. v. Hulsey,* 115 Ala. 193; *Shorter v. So. Ry. Co.,* 121 Ala. 158; *Dantzler v. DeBardelaben,* 101 Ala. 316; Dresser's Emp. Liability, § 72, p. 318. The court erred in not sustaining the demurrer to count twelve.

The court sustained demurrers to all of the thirty-one special pleas filed by appellant, except pleas 23, 25 and 32. We especially insist that the court erred in sustaining demurrers to plea 5, 6, 7, 8, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 26, 27, 28, 29, 30, 31 and 33.

Plea 5 avers facts constituting contributory negligence as a matter of law. If deceased remained under the block after he had been warned he certainly did that which an ordinarily prudent man would not have done. The pleas in the *Hastings case,* 138 Ala. 433 and in the *Shanks case,* 139 Ala. 501, did not contain facts constituting contributory negligence as a matter of law, hence the word *negligently* should have been placed in the proper place in those pleas.—*Stutt's case,* 105 Ala. 368; *Bradford's case,* 86 Ala. 574; *Schlof's case,* 100 Ala. 377; *Bank's case,* 104 Ala. 508; *Wilson's case,* 85 Ala. 269; *Bivin's case,* 103 Ala. 142; *Walter's case,* 91 Ala. 435; *Allen's case,* 99 Ala. 359. What is said of plea five and the authorities cited thereto, applies with even more force to the other pleas above mentioned. Pleas 26 and 33 were directed as is shown by the record to counts 9, 10 and 12. These pleas and the counts to which they were directed do not show on their face that the injury proximately resulted from the intervening negligence of Reiter. There is nothing on the face of the counts and plea that after Riter knew or became aware of the perilous position of the deceased, that he negligently slackened the chain or caused it to be slackened or caused the block to fall.—*Lamb's case,* 26 So. 974; *Tanner's case,* 60 Ala. 621; *Brown's case,* 25 So. 609. If an employe acts in violation of known rules or special instructions and is injured, he is guilty of contributory negligence which will bar a recovery.—*Shorter v. So. Ry. Co.,* 121 Ala. 158; *C. & W. Ry. Co. v. Bradford,* 86 Ala. 583. One who continues to work with a knowledge of the danger-

ous conditions surrounding him until he is injured is held to voluntarily assume the risk and is not entitled to recovery.—*S. I. & S. Co. v. Knowle*, 30 So. Rep. 584. For authorities with reference to the other pleas and demurrers and the sufficiency of the pleas, we cite. *B. C. M. Co. v. Parker*, 32 So. 700; *P. T. C. Co. v. Hulsey*, 115 Ala. 193; *D. C. W. Co. v. Mehaffey*, 29 So. 646. The evidence is without conflict that the deceased was not a resident of this State, that he lived in Georgia, and that he had no property here or elsewhere. The only evidence offered in rebuttal to special plea numbered 3 1-2 was the letters of administration issued to plaintiff. There was no authority for the appointment of an administrator for intestate in such a case, the appointment then was void.—Code 1896, § 55; *Bradley v. Broughton*, 34 Ala. 694; *Miller v. Jones*, 26 Ala. 247; *Treadwell v. Rainey*, 9 Ala. 59; *Gayle v. Blackmon*, 1 Stew. 423; *Coaltort v. Allen*, 40 Ala. 157.

Under the evidence in this case the verdict of the jury was excessive.—*Orr's case*, 91 Ala. 548. The court erred in refusing the charges requested by defendant.—*Birmingham Ry., L. & P. Co. v. Bynum*, 36 So. 736. The court erred in giving the written charges requested by plaintiff.

GOODHUE & BLACKWOOD, for Appellee.—The demurrer to count 9 was properly overruled. The only ground of demurrer insisted upon is the fifth. This is fully answered by the averment of the ninth count that Al Reiter negligently caused the chain to be slackened; and there is no attempt in this count to set out any particular state of facts which rendered it negligent in Al Reiter to cause the chain to be slackened.—*Conrad v. Gray*, 109 Ala. 133; *L. & N. R. R. Co. v. Hawkins*, 92 Ala. 241. The court did not err in overruling demurrer to count 10. The negligence of Al. Reiter is relied on and his name is stated. Count 12 was manifestly a good count and not subject to the grounds of demurrer interposed.

Pleas 3, 4, 5, 6, 7, 8, 11, 12, 13, 14, 15, are manifestly bad because none of them aver that intestate negligently did any act or failed to do an act; and each fails to aver

facts which as matter of law constitutes contributory negligence.—*Montgomery St. Ry. Co. v. Shanks*, 139 Ala. 501; *M. St. Ry. Co. v. Hastings*, 138 Ala. 433. Pleas numbered from 26 to 33 were specially directed to count 5 of the complaint, which count was eliminated by charge of the court. They were otherwise bad.—*Gray v. Scott*, 66 Pa. St. 346; Beach on Contributory Negligence, § 33, pp. 42-44; *Woodward Iron Co. v. Herndon*, 130 Ala. 374; *L. & N. R. R. Co. v. Quick*, 125 Ala. 561; *L. & N. R. R. Co. v. Brown*, 121 Ala. 228; *Smithwick v. H. & U. Co.*, 59 Conn. 268, so. 12 L. R. A. 279; Horton on Negligence, §§ 85, 300-302; Thompson on Negligence, §§ 43-58 (Vol. 1); *Milwaukee R. R. Co. v. Kellar*, 94 U. S. 469. The court did not err in overruling the objection to the question as to what wages the deceased was getting.—*L. & N. R. R. Co. v. Trammell*, 93 Ala. 354. A general objection to evidence a part of which is legal, may be overruled.—*Dillard v. Well*, 55 Ala. 479. The evidence concerning the straightening of the column, the orders of Reiter relating thereto was competent. *L. & N. R. R. Co. v. Pearson*, 97 Ala. 211. The charges requested by the plaintiff and given by the court stated elemental principles of law and the court committed no error. The charges requested by the defendant and refused by the court were either faulty or were fully covered by written charges already given and hence there was no error in their refusal.

SIMPSON, J.—This is an action for damages on account of the death of appellee's intestate, who was an employe of appellant.

The first assignment of error insisted upon by counsel for appellant is that the court erred in overruling the demurrer to the ninth count of the complaint. There was no error in this action of the court; said count distinctly alleges the facts necessary to constitute negligence, in accordance with the decisions of this court. *Conrad v. Gray*, 109 Ala. 130, 19 South. 398; *Ensley Ry. Co. v. Chewning*, 93 Ala. 24, 9 South. 458; *L. & N. R. R. Co. v. Hawkins*, 92 Ala. 241, 9 South. 271.

Count 10 shows the relation of the parties, states that the injury resulted from the act of some person in the service, etc., describes what that act was, states that it was done "in obedience to the particular instructions" of Al Reiter; that he was delegated with the authority of the defendant; and that he was negligent in giving the instructions. It was not necessary to give the name of the person who slackened the chain. The gravamen of the charge is that Reiter was negligent in giving the order, and it matters not which employe obeyed the order, if it was done in accordance with the order of Reiter. The particular instructions given by Reiter are plainly stated, to wit, "to slacken said chain." This court has frequently held, in similar cases, that it is not necessary to aver in what particular or respect the orders or directions were negligent. The general averment that the orders "were negligently given" covers the case, and calls for evidence to show the circumstances, so that it can be determined whether it was negligent to give the order.—*M. & O. R. R. Co. v. George*, 94 Ala. 199, 214, 10 South. 145, and cases *supra*. In the case of *Decatur Carwheel, etc. Co. v. Mehaffey*, 128 Ala. 242, 29 South. 646, the pleader undertook to state the particulars which constituted the negligence of the order, and the court decided that those facts did not show negligence *per se*. And in the case of *Postal Tel. Co. v. Hulsey*, 115 Ala. 193, 203, 22 South. 854, the trouble was that the act or omission of the party which caused the injury was not alleged to have been in obedience to the particular instructions of any one "delegated," etc.

Count 12 sufficiently states a cause of action, under subdivision 2 of section 1749 of the Code of 1896.

Referring to the action of the court in sustaining demurrers to certain pleas setting up contributory negligence on the part of the plaintiff: the negligence which it was alleged the plaintiff was guilty of was, in substance, that he remained under the block, after he had been warned that it was dangerous and liable to fall. The pleading shows that it was not claimed that these warnings were verified, by the falling of the block resulting from its being liable to fall, in the condition in which

it was when the warnings were given, but that it fell by the intervening of another cause, to wit, the negligence of some one in the employ of defendant, who slackened the chain which was holding the block in place, thus causing it to fall. If a person chooses to be negligent, and to assume the risk of one danger, which is pointed out to him, it does not necessarily follow that he is guilty of contributory negligence as to another danger which arises from the intervention of some act of which he did not have notice. "As to dangers arising through other sources, dangers which he was not bound to anticipate, and of whose existence he had no knowledge, he took no risk, and assumed no duty of taking care."—*Smithwick v. Hall & Upson Co.,* 59 Conn. 261, 269, 21 Atl. 924, 12 L. R. A. 279, 21 Am. St. Rep. 104; *Gray v. Scott,* 66 Pa. 345, 347, 5 Am. Rep. 371. As stated by Judge Cooley, and quoted with approval by this court: "If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last proximate cause, and refuse to trace it to that which was more remote." *L. & N. R. R. Co. v. Quick,* 125 Ala. 561, 28 South. 14. Consequently the demurrers were properly sustained to said pleas. As to those pleas which may be construed as alleging contributory negligence in regard to the danger of the falling of the block after it had been released by the loosening or slackening of the chain, the demurrers were overruled as to pleas 23, 25, and 32. So, the defendant had the full benefit of that defense.

The next assignment insisted on in the brief of appellant is that the court erred in permitting appellee to propound to the witness R. H. Williams the question, "What wages was your brother getting at the time of his death?" and in refusing to exclude the answer thereto. There was no error in this. In arriving at a conclusion as to the prospective value of the services of the deceased, it was entirely proper to inform the jury what wages he was earning at the time of his death; and, if there were any extraordinary circumstances existing

then, so that the amount which he was receiving then was not a proper criterion, the defendant could have brcugh forward evidence of the same for the consideratin cf the jury.

As the complaint charged the negligence of Al Reiter in loosening the chain which held the block, it was material to show that he had directed the use of the block in that way so that he knew what would be the probable consequences when he gave the order to slacken the chain.

The objection to the question to the witness Renfro, "What appreciable time elapsed from the time Reiter gave the order to slacken until deceased was struck by the block, and did he have time to get away?" was properly overruled. Even if it be admitted that the latter part of the question was objectionable, and that the rule is that, if a part only of the question be objectionable, the general objection is properly sustained (*Matthews v. Farrell*, 140 Ala. 298, 37 South. 325), yet the question seems to call rather for a statement of collective facts, based on the knowledge of the witness of all the circumstances.—*Rollings v. State*, 136 Ala. 126, 34 South. 349. The witness could certainly come nearer stating whether the time after the giving of the order was sufficient for the deceased to have gotten away, than he could the exact time which elapsed, and the jury would thereby have a better practical understanding of it than they could gain by making a mathematical calculation based upon the laws of physics in regard to the time consumed by a falling body.

The objection to the question to the witness Renfro, "Could the column have straightened in this way, by swinging the line as you have stated, without slackening the chain?" was properly overruled. The witness had been shown to be a structuarl iron workman of 15 or 16 years' experience, and was competent to express an opinion on that subject, and, besides, he had already testified, without objection, that by using the line and swinging the column in the manner referred to "it would swing the top of the derrick around and straighten the column without slackening the chain." His experience also qual-

ified him to state what position it was necessary for deceased to occupy in order to perform his duties.

The objections to the questions which were asked for the purpose of impeaching one or the other of the Williams witnesses were properly sustained, as they did not identify the witness. Appellant insists that an affirmative answer would have impeached both witnesses; but this is not correct, for proof that one of them heard the other make the statement would not impeach him, as it is not material to this case whether or not he did hear it. The only thing that would impeach either of them would be proof that he had made the statement which he denies making.

The court erred in excluding that part of the testimony of the witnesses Gilchrist and McDaniel "that Williams could have stood out from under the block where it would not have fell on him, and equally as well performed the work he was performing when the block fell and struck him." In view of some of the counts and parts of the evidence it was material to show whether there was a safe way of doing the work, and it cannot be said that the statement of what the witness would swear was not a part of the evidence submitted to the jury, as it appears in the bill of exceptions as a part of the evidence under the statement that it was admitted that said witness would so testify.

Referring to the forty-eighth assignment of error, relating to the court's definition of negligence: If it was merely misleading, as contended by counsel for appellant, we could not declare it error, as appellant might have requested explanatory charges. Besides, in considering a part of the charge of the court, it must be taken in connection with the remainder of the charge. Under the facts in this case, and in connection with the entire charge of the court, we cannot say that there was reversible error in this definition of negligence. While it is not an exhaustive definition, yet, on a review of the numerous attempts of courts and textwriters to define negligence, it seems to be almost impossible to give a definition in one sentence which will cover the conditions of every case. In an illustration given by counsel

[Reiter-Connolly Mfg. Co. v. Hamlin as Admr.]

of a man on the brink of a stream omitting to exert himself to save the drowning man, it could not be said to be a wrongful omission, because no legal duty rested-upon him to do anything; nor could the drowning be said to be the result of said omission, because the omission did not cause the drowning.

That portion of the charge referred to in the fiftieth assignment of error referred to the allegations in counts 5 and 11, and the court adjourned during the progress of the charge, and on the second day stated to the jury that counts 5 and 11 had been eliminated, and that the charge given with reference to them was withdrawn. So, it is unnecessary to further consider this assignment.

Taking the other parts of the court's oral charge, excepted to as before stated, in connection with the entire charge, we find no reversible error, except in that part referred to in the fifty-fifth and fifty-sixth assignments, on the subject of the measure of damages. The true measure of damages in such cases is, as heretofore declared by this court, that which gives such sum as, being put to interest, will each year, by taking a part of the principal and adding it to the interest, yield the amount of the deceased's yearly contribution to his family less his personal expenses, and so that the whole remaining principal, at the end of his expectancy of life, added to the interest on this balance for that year will equal the amount of his yearly contribution to his family, less his personal expenses.—*L. & N. R. R. Co. v. Trammell,* 93 Ala. 350, 355, 9 South. 870; *Decatur Co. v. Mehaffey,* 128 Ala. 242, 29 South. 646; *Ala. Mineral R. R. v. Jones,* 114 Ala. 519, 21 South. 507, 62 Am. St. Rep. 121; Mayfield's Dig. p. 264, § 24.

As applicable to the testimony in this case, charge 2, given on the request of the plaintiff, was correct; the assurance claimed to have been given by the representative of the master being, that he would hold the strain on the chain until deceased got from beneath the block.

Charge 4, given on the request of the plaintiff, was not erroneous. The words, "considering his surroundings, at the time, did he exercise such reasonable care for his own safety as would be expected of an ordinarily

prudent man," are equivalent to hypothesizing it on "one similarly situated," and, if defendant considered it misleading, it could have asked an explanatory charge.

Charge 6, given at the request of the plaintiff, was not erroneous. If Reiter was powerless to prevent the slackening of the chain, then it could not be said that he "negligently" allowed said chain to be slackened. It was a matter for the jury to consider, under all the circumstances, as detailed in the evidence, whether he was negligent in allowing said chain to be slackened.

Charge 12, requested by the defendant, was fully covered by charge 45, which was given at its request.

Charge 13, requested by the defendant, was fully covered by charge 50, which was given at its request.

Charge 14 is substantially covered by charge 43, given at the instance of defendant.

Charge 17, requested by the defendant, was properly refused. It was not hypothesized on the jury's finding, as a fact, from the evidence, that the block did fall because of the fact that the chain was slackened by the column having rested on the base, and, further, that he remained under it after knowledge of the fact that the chain had been slackened.

The form of charge 21, requested by defendant, has been frequently condemned by this court, and it was properly refused.—*Goldstein v. Leake,* 138 Ala. 573, 36 South. 458.

The court cannot be placed in error for refusing to give charge 22, requested by the defendant. It was calculated to mislead the jury to the conclusion that the burden of proof was on the plaintiff, even as to the matter of contributory negligence.

The substance of charge 27 requested by defendant, was given in charge 50, at its request.

Charge 28 was properly refused. It does not hypothesize the fact that the falling of the block was caused by the resting of the column on the base. It might have fallen at any time from the negligent slackening of the chain under the orders of Reiter.

The idea presented in charge 31 is more correctly given in charge 41. It is also defective in not stating from

what cause the block did fall, and in ignoring the testimony of the assurance of the superintendent.

Charge 32 is subject to the same objection.

Charge 33 does not state that a sufficient time elapsed after deceased had notice that the chain was being slackened, and before he was struck, for him to get out of the way.

Charge 34 was covered in substance by charges 39, 42, and 43, which were given at the instance of the defendant.

Charge 35 was substantially the same as charge 45, which was given at the request of the defendant.

Charge 37 was substantially covered by charge 50, which was given on request of defendant.

Charge 38 is defective, because it ignores the assurance of the superintendent that he would keep the block from slipping.

There is no force in the contention of appellant that the general affirmative charge should have been given in favor of defendant because of the invalidity of the grant of letters of administration, as set up in plea No. 3 1-2 both because that matter could not be inquired into collaterally, and because the claim upon which this suit was brought was sufficient assets to justify the appointment.—*McGhee v. Willis*, 134 Ala. 281, 290, 32 South. 301; *Hutchins v. St. Paul, etc., Ry.*, 44 Minn. 5, 46 N. W. 79; *Brown v. L. & N. R. R. Co.*, 97 Ky. 228, 30 S. W. 639; *Findlay v. Chicago R. R.*, 106 Mich. 700, 64 N. W. 732.

The next insistence of appellant is that the verdict was excessive. The evidence showed that the deceased, at the time of his death, was earning $3.50 per day; that his board cost $3.50 or $4.00 per week; that he expended on clothing about $38 per annum; that he did not work all the time, but that when he was at work he sent his father and mother from $15 to $20 per month; also that he did not save any money, and that his expectancy was 40 years. The *Trammell Case* and others, *supra*, have fully settled the measure of damages, in those cases, where there was a dependent family. Dr. James K. Powers, an able mathematician of this State, has very clearly explained the process by which the amount re-

[Reiter-Connolly Mfg. Co. v. Hamlin as Admr.]

coverable, according to these cases, can be readily work-
ed out, and we here insert his table which simplifies the
process.

Tables showing the worth of annuties of $1.00 have
been made and published, but I have never seen such a
table for a rate above 7 per cent. This is accounted for
by the fact that in England and other countries, where
annuities are popular, 8 per cent. is an unheard of rate.
For this reason I give a table showing the "present
worth" of an annuity of $10) (at 8 per cent.) up to 40
years:

| Yr. | Present Worth | | Yr. | Present Worth | | Yr. | Present Worth | | Yr. | Present Worth |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 92 59 | | 11 | $713 90 | | 21 | $1,001 68 | | 31 | $1,134 97 |
| 2 | 178 33 | | 12 | 753 61 | | 22 | 1,020 07 | | 32 | 1,143 49 |
| 3 | 257 71 | | 13 | 790 38 | | 23 | 1,037 10 | | 33 | 1,151 38 |
| 4 | 331 21 | | 14 | 824 43 | | 24 | 1,052 87 | | 34 | 1,158 69 |
| 5 | 399 27 | | 15 | 855 95 | | 25 | 1,067 47 | | 35 | 1,165 45 |
| 6 | 462 29 | | 16 | 885 .14 | | 26 | 1,080 99 | | 36 | 1,171 71 |
| 7 | 520 64 | | 17 | 912 17 | | 27 | 1,093 51 | | 37 | 1,177 51 |
| 8 | 574 67 | | 18 | 937 19 | | 28 | 1,105 10 | | 38 | 1,182 88 |
| 9 | 624 69 | | 19 | 960 36 | | 29 | 1,115 83 | | 39 | 1,187 85 |
| 10 | 671 01 | | 20 | 981 81 | | 30 | 1,125 77 | | 40 | 1,192 45 |

If, in this case, we conclude that, inasmuch as the de-
ceased recognized that his father and mother were de-
pendent upon him by sending them a certain amount
each month (which we think is the true theory of the
case), then the amount which he appropriated to them
did not exceed $20 per month, which, if he worked all
the time, would be $240 per annum, and he evidently
expended the remainder on himself, as it is shown he did
not save anything. These being the facts, the amount re-
coverable in this case would be $2,861.88.

In those cases where the deceased had no dependents,
so that it could not be ascertained what amount of his
wages was probably devoted to them, a rule a little dif-
ferent from that fixed in the Trammell Case has been
used in ascertaining the value of the life, to-wit, such a
sum as at legal interest would produce, at the expiration

of the expectaincy of the deceased, an amount equal to his probable net earnings during that period, based on the amount of his earnings before, as shown by the evidence. *McAdory v. L. & N. R. R. Co.,* 94 Ala. 272, 275, 276, 10 South. 507. His net earnings, of course, are just what he saved out of his wages. In this case it is shown that the amount set to his parents was all that he saved, so that, even supposing that he worked every day in the year, his net earnings, could not be more than $240 per annum, which in the 40 years would amount to $9,600, and the sum of $2,285.70 (and a small fraction of a cent) paid now, would, in a period of 40 years, at legal interest, produce the said sum of $9,600. It is evident then, that according to either method of computation, the verdict, in this case, was excessive.

The judgment of the court is reversed, and the cause remanded.

TYSON, DOWDELL, and ANDERSON, JJ., concur.


