# Western Railway of Alabama v. Walker.

*Action against a Railroad Company to recover Damages for Personal Injuries to a Passenger.*

1. *Pleading and practice; effect of joining issue upon immaterial pleas.* Though the facts averred in a plea by a defendant does not constitute a defense to the action, if the plaintiff takes issue upon such plea, the defendant is entitled to a verdict, if the evidence sustains the facts set up in said pleas ; and charges which hypothesize the facts which are set up in such pleas and direct a verdict for the defendant in the event the jury should find, from the evidence, those alleged facts to exist, are properly given.

2. *Liability of railroad company for personal injuries; when not shown.* A railroad company is not liable in damages for personal injuries to a passenger, if there was not negligence in the operation or equipment of the train alleged to have produced the accident which resulted in the injury, but the accident was caused by latent and undiscoverable defects in the appliances of the train, or by reason of the interference of a stranger with such appliances ; provided, those in charge of the train promptly and properly used all means known to skillful trainmen to prevent the accident.

Appeal from the Circuit Court of Macon.

Tried before the Hon. N. D. Denson.

Apellee, Mary E. Walker, brought her action against the appellant, the Western Railway of Alabama, for damages received by her while a passenger on one of its regular trains, resulting from a collision between that train and another.

The first count of the complaint avers that the defendant so negligently ran and propelled one of its trains along its road as to run upon and against a car in which the plaintiff was a passenger, and thereby caused her injuries. The second count avers that the defendant so carelessly and negligently managed and controlled a certain train then operated by its servants and agents as to run the same upon and against the car in which plaintiff was a passenger and to throw the same partially from the track. The third count avers that, by reason of the

negligence of the defendant, she was violently thrown to the floor of the car in which she was a passenger, and injured as specifically averred therein. Each count of the complaint distinctly avers that the negligent act of the defendant caused her to be thrown upon the floor, and one of her legs broken, and other resultant injuries.

To each count of the complaint the defendant filed two grounds of demurrer. The first ground was, that the count did not show that defendant's negligence caused or proximately contributed to the injury. Second, that they each aver conclusions and not facts, and fail to show in what the alleged injury consists. To the first and second counts defendant filed an additional ground of demurrer, which was, that the counts assumed that the mere running of one train of cars against another was negligence. These demurrers were overruled.

Defendant then filed several pleas. 1. The general issue. 2. That the injury was the result of mere accident, and without its fault. 3. That the injury was the result of a risk which plaintiff incurred as a passenger, and arose from a casualty which human sagacity and the utmost care could not have guarded against. 4. That the train which injured the plaintiff was equipped with the most approved appliances for handling and stopping the same, was operated by skilled and competent men, who were at their posts carefully handling the same, and that owing to some latent defect in the air brake which had not been and could not be discovered or prevented by any known or practicable test, such brakes failed to work properly and stop the engine and train within the usual distance and time, although they were promptly and properly applied by those in charge, and that by reason of such failure, and without fault or negligence on the part of the defendant, the injury occurred. A demurrer to this plea was sustained, and thereupon defendant amended it by adding to it these words : "And defendant avers that those in charge of said engine and train promptly and properly used all means known to skillful engineers to stop the said engine and train and to prevent the said collision, as alleged in the complaint." The plaintiff then took issue on the plea.

The fifth plea avers that the train had started on a trip from Atlanta, where it was properly inspected and found

.[Western Railway of Alabama v. Walker.]

to be equipped with the appliances of the character alleged in the preceding plea; that it was operated by a good and sufficient crew of skilled and competent men, who remained at their posts and carefully handled the train at the time the collision occurred; that it made stops on the trip, including one at a station only three miles from where the accident occurred; that such appliances worked well, and stopped the train promptly and satisfactorily, and were in good and proper order; that between the last place of stopping and the place at which the accident occurred, some unknown person, without its knowledge or consent, turned off the air in the tank of the engine to such an extent as to partially exhaust the air in the cylinders under the coaches, and impairing the capacity of the appliances to stop the engine and train in the usual and customary time and distance; that after such interference the act could not by proper diligence have been discovered, and that by reason of such interference, and without fault or neglect on the part of the defendant, plaintiff received the injury complained of. This plea was also amended by adding to it the same words which were added to the fourth plea, upon a demurrer to the same having been sustained in its original form; and on this plea, as amended, the plaintiff joined issue.

The sixth plea was one of contributory negligence, but on the trial it was withdrawn as there was no evidence to sustain it.

The testimony showed the following facts: The plaintiff became a passenger on a passenger train which left Montgomery the morning of the accident about 10 o'clock. That train usually met another train from Atlanta at Mount Meigs Station, about fifteen miles from Montgomery, but the Atlanta train being behind, it was ordered to meet it at Cliatt's, twenty-one miles from Montgomery. The train went to Cliatt's, and the engine and several coaches were pulled on the side track, but for some reason, unexplained by the testimony, the coach in which the plaintiff was a passenger was left on the main track. While it was in this position it was run into by the train coming from Atlanta, partially throwing it off of the track, and as the result of this collision the plaintiff was thrown violently down and her leg broken at the hip joint. From this injury she was confined for many weeks to her bed, suffered intense

pain, bodily and mentally, and her leg permanently shortened so as to make her unable to walk. The evidence as to whether the brakes upon the train from Atlanta were applied in proper time to have stopped that train, even had they worked properly, was conflicting; that on the part of the plaintiffs tending to show that no effort was made to apply them until they were within a very short distance of the car in which plaintiff was a passenger. The testimony further showed that it was a bright day, that the track was straight for about three-fourths of a mile in the direction of Atlanta, and that the crew on the Atlanta train could easily have seen that the car in which plaintiff was a passenger was on the main track that distance from it. It was also shown that the conductor on the train on which the plaintiff was a passenger saw that there would be a collision before the trains collided and warned the passengers to get off; that some of them had time to do so; and the plaintiff got up for that purpose, but before she could get off was thrown down as stated above.

The evidence for the defendant was to the effect that the track, road bed, cars and locomotives of the defendant company were in first-class condition; that the machinery for controlling and stopping trains in use on defendant's train and particularly on the train which it is alleged collided with the car on which plaintiff was a passenger, from which collision she suffered the injury complained of, was of the most approved pattern, and such as was in use by the best regulated railways; that the train was manned by a sufficient crew, composed of men of carefulness, skill and diligence, fully competent for their respective duties, each of whom on the occasion of the collision was at his post of duty, faithfully performing his duty; that the said machinery had been fully inspected and tested by all the means known to skillful manufacturers, and that it was made of the best material and properly constructed for the purposes for which it was intended; that the machinery and air brakes on said train had been carefully inspected by a competent official in Atlanta just before it started from that city; that said machinery was then in good order and that it worked efficiently and accomplished its purposes all along the route up to the time of the accident, and the train was readily controlled and stopped by the

application of the air brakes at every station passed before reaching Cliatt's; that the engineer of the train began to use and apply the air brake to stop the train at the usual stopping place at that station, about 400 yards from said point, and continued to apply said brakes for that purpose, and used every effort to stop said train until the collision occurred; that the distance from the platform or stopping place at which said attempted application was made, was ample within which to stop the train, had the air brakes been controllable; that the air brakes would not work; that when that fact was discovered the engine was promptly reversed and steam applied for the purpose of stopping the train; that the engineer in charge of the engine used every appliance to stop the train known to skillful engineers, but notwithstanding, the train could not be controlled or stopped until it had collided with the other train; that as soon as possible a close examination of the machinery was made, and it was discovered that the handle of the plug of the air brake between the tender and the mail car—that is, on the back of the tender—had been turned so as to cut off the air from the train brakes, and, therefore, to render it impossible to stop the cars composing the train; that this turning of the handle of the air plug was brought about by a latent defect in the machinery which could not possibly be discovered, or by the interference of a stranger over whom the defendant had no control.

Under the opinion on the present appeal, it is deemed unnecessary to set out in detail the rulings of the court upon the evidence, or any of the charges which were given or refused by the court, except the 11th and 12th charges, which were requested by the defendant, and to the refusal to give each of which the defendant separately excepted. These charges were as follows:

(11.) "If the jury believe from the evidence that the engine and train of cars which it is alleged injured plaintiff was properly equipped with the most approved appliances for handling and stopping such engines and trains, was manned and operated by a sufficient crew of skilled and competent men who were at their posts and carefully handling said engine and train on the occasion of said collision, but owing to some latent defect or imperfection in the air brake fixtures on said train, which

had not been discovered and which could not have been discovered or prevented by any known or practicable test for the discovery of such defect or imperfection, the air brake on said train and engine failed to work properly and stop said train within the usual distance and time, although the same were promptly and properly applied by those in charge of said engine and train, and by reason of said failure and without fault or negligence on the part of defendant, said injury occurred, and that those in charge of said engine and train promptly and properly used all the means known to skillful engineers to stop said engine and train and prevent the said collision, which it is alleged injured plaintiff, then the jury must find for the defendant." (12.) "If the jury believe from the evidence that the engine and train which it is alleged injured plaintiff, had started on a trip from Atlanta, Ga., where it was properly inspected and found to be equipped with the most approved appliances for handling and stopping said engine and cars, and that such equipage was in good order, that said engine and train was operated by a good and sufficient crew of skilled and competent men who remained at their posts of duty and carefully handled said engine and train on said trip, including the time and place where said alleged injury occurred, that on said trip said engine and train made many stops at various stations, that in making each and all of said stops, including the one at Shorter's Station, only three miles from Cliatt's Station, where the alleged injury is said to have occurred, the said appliances worked well and stopped said train in a prompt and satisfactory manner, and were in good and proper order and were in every way safe and suitable for the purposes intended, that at and during the last stops made by said train before reaching Cliatt's Station, to-wit, at Shorter's Station, three miles from Cliatt's Station, without the knowledge or consent of those in charge of said engine and train, some unknown person turned off the air in the tank of said engine to such an extent as to partially exhaust the air in the auxiliary cylinders under the coaches of said train, thereby impairing the capacity of said appliances to stop said engine and train in the usual and customary distance and manner; that after said interference by said unknown person those in charge of said engine and train did not and could not by proper

diligence have discovered that said air had been turned off, and that by reason of said interference, and without fault or neglect on the defendant's part plaintiff received the injuries complained of, and that those in charge of said engine and train promptly and properly used all means known to skillful engineers to stop said engine and train and to prevent said collision which is alleged injured plaintiff, then they must find for the defendant."

Judgment was rendered for the plaintiff for $6,000. A motion for a new trial was entered by the defendant, for which three grounds were assigned: 1st. That the verdict was contrary to the weight of the evidence. 2d. That it was excessive. 3d. That the court erred in giving the written charges asked by the plaintiff. This. motion was overruled.

The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

GEORGE P. HARRISON and W. F. FOSTER, for appellant.—The facts set up in the pleas of the defendant, and upon which the plaintiffs joined issue, as shown by the evidence to have existed, constitutes a complete defense to the plaintiffs' action.—Hutchinson on Carriers, pp. 500-512; 2 Redfield on Railways, pp. 192-193; 2 Amer. & Eng. Encyc. of Law, pp. 746-747; 16. Amer. & Eng. Encyc. of Law, pp. 396-397; L. & N. R. R. Co. v. Allen, 78 Ala. 494; Ga. Pac. R. Co. v. Propst, 83 Ala. 518; L. & N. R. R. Co. v. Jones, 83 Ala. 382; R. & D. R. R. Co. v. Jones, 92 Ala. 218; Houston &c. R. R. Co. v. Lee, 69 Texas 556.

TOMPKINS & TROY, contra.—1. The complaint avers that the collision was the result of the negligence of defendant's servants. But even if it had not done so, if it averred that plaintiff was a passenger and was injured by a collision between defendant's trains, that would have been sufficient, because in every case where a passenger is injured in a collision or by the derailment of a train, the law presumes that the carrier was guilty of negligence.—M. & E. R. R. Co. v. Mallette, 92 Ala. 209; Iron R. R. Co. v. Mowery, 39 Ohio St. 418.

2. The special pleas. demurred to were all pleas setting up facts admissible under the plea of not guilty,

18

They all averred facts tending to·rebut the charge of negligence on the part of defendant, and the record shows all of these facts were introduced in evidence. Hence, if the original pleas were good, sustaining a demurrer to them was error without injury.—*R. & D. R. R. Co. v. Hissong,* 97 Ala. 187 ; *L. & N. R. R. Co. v. Davis,* 91 Ala. 487 ; *L. & N. R. R. Co. v. Hall,* 87 Ala. 708.

McCLELLAN, J.—Charges 11 and 12 requested by the defendant should have been given. In the first place, each of them hypothesizes facts which are set up in certain pleas interposed by the defendant upon which the plaintiff took issue, and in support of which evidence was adduced, and directs a verdict for the defendant in the event the jury should find these alleged facts to exist. Whether the facts in themselves entitled the defendant to a verdict is not material on this state of pleading ; granting that the issue thus made was a false one, the plaintiff should be cast in the suit upon it if the defendant sustained its pleas.

But in the next place, we are of the opinion that the issue was a true one ; that the facts averred in the pleas and finding support in tendencies of the evidence presented a defense to the action if the jury found them to exist. The facts showed that the defendant, nor its employes had not been guilty of any negligence in the equipment or operation of the train which collided with the car on which plaintiff was a passenger ; and these instructions are·properly limited to the charge of negligence made in respect of that train, and hypothesize a belief on the part of the jury that plaintiff's injuries were inflicted by that train, and did not result from negligence on the part of those in control of the train on which plaintiff was being carried.

We find no error in the rulings of the trial court on the pleadings, on the admissibility of evidence, or in respect of other charges given or refused.

Reversed and remanded.