# Alabama Consolidated Coal & Iron Co. v. Heald, Admr.

*Action for Damages for Death of Employee.*

(Decided Feb. 26, 1910.   Rehearing granted June 30, 1910,
53 South. 162.)

1. *Limitation of Action; Relation Back; Amendment.*—Where both counts plead substantially the same state of facts, and the original count was based upon the failure of the master to furnish the servant a safe place in which to work, and the amended count was based upon subdivision 2, sec. 3910, Code 1907, the amendment related back to the filing of the original count and was not barred by the statute of limitations.

2. *Appeal and Error; Law of the Case.*—The necessity of stability and uniformity of opinion is still to be recognized and appreciated although the court is freed from the rule of the law of the case by section 5965, Code 1907.

3. *Same; Harmless Error.*—It is harmless error to allow to be added and to refuse to strike a new count identical with the count already in the complaint.

4. *Evidence; Res Gestae.*—Where the action is based on the negligence of the superintendent in ordering an employee to go into a mine, evidence that when he ordered the servant to go into the mine,

[Alabama Consolidated Coal & Iron Co. v. Heald, Admr.]

where he was afterwards suffocated by gas, the superintendent told him that it was perfectly safe, was admissible as part of the res gestae of the servants going into the mine, and of the order given him to go in.

5. *Same; Opinion Evidence; Experts; Qualifications.*—A general knowledge of the department to which the specialty belongs is enough to qualify a witness to testify thereto, and if such one, in the opinion of the court, have special acquaintance with the immediate line of inquiry, he need not be thoroughly acquainted with the differentia of the specific specialty under consideration.

6. *Same; Determination of Question.*—The sufficiency of a witness's efficiency in knowledge of the subject inquired about to qualify him to speak as an expert in the matter is addressed to the discretion of the trial court and its rulings thereon can be disturbed only on its clearly appearing that the court's action was erroneous.

7. *Same.*—Where it appeared that the witness had been a machinist for fifteen or twenty years, and that he had formerly been in defendant's employ, and in charge of its machinery at its mines for two years, and knew what its air receiver at the mouth of its mine was, and had some knowledge of chemistry, a sufficient prima facie showing of his qualification to speak as an expert was made so as to permit him to testify that if the receiver was as hot as a cook stove, it would indicate to the master mechanic that the air that was being forced into the mines had been reduced to a poisonous carbonic, dioxide gas.

8. *Same; Safety of Doing Things.*—While the question of the safety of going into a mine or not was finally to be determined by the jury, an expert who had testified that under certain conditions there would be carbonic dioxide gas in the mine and that it was poisonous and suffocating, could give his opinion that it would be unsafe to go into the mine when that condition existed; his opinion not concluding the jury, but being merely to be considered by them in reaching their conclusion.

9. *Trial; Striking Out Evidence.*—Where no objection was interposed to the question and the answer was responsive, a refusal of the motion to exclude the answer was not error.

10. *Master and Servant; Injury to Servant; Contributory Negligence; Evidence.*—Where an employee was ordered into the mine by the superintendent and was there suffocated by gas, it was competent, on the issues of contributory negligence and assumption of risk, to show that the superintendent said to him that it was safe to go into the mine.

11. *Same; Contributory Negligence.*—Where a miner was told by a person in the presence of the superintendent that it was not safe to go into the mine and the superintendent immediately said to the miner, "go ahead, everything is alright," it cannot be said as a matter of law that a degree of danger calculated to deter a person of ordinary prudence from the undertaking, was revealed, so as to make him guilty of contributory negligence in going into the mines.

12. *Same; Relying on Master's Assurance; Instructions.*—Where the action was for death of a miner arising from gas in a mine into

[Alabama Consolidated Coal & Iron Co. v. Heald, Admr.]

which he was ordered to go by the master mechanic, gas being generated from overheating of the air receiver located outside of the mine requested instructions on the question of contributory negligence which eliminated the right of the deceased to rely to any extent on the assurance of the master mechanic, that it was safe to go into the mine, if the miner had, as compared with the master mechanic, equal or better·opportunity to see and know the extent of danger of going into the mine, the evidence tending to show that the ·danger was not open and obvious, were bad and misleading, as the master and servant are not equally chargeable with knowledge of a danger not patent although they had equal opportunity to ascertain ·it.

13. *Same.*—Where the death of the miner was from gas from the defendant's mine into which he was ordered to go by the master mechanic, such ordering being claimed to have been negligent, a charge asserting that if the jury believe that the foul air in the mine was the proximate cause of his death, and not any order given by the master mechanic, there could be no recovery; was so misleading as to authorize its refusal.

14. *Same; Care Required.*—An instruction on negligence which requires a higher degree of care on the master than would have been exercised by an ordinarily prudent person under like circumstances, requires a too high degree of care; and not being of a merely misleading tendency but being affirmative error, such error cannot be cured by giving requested written instructions covering the point.

15. *Same; Contributory Negligence; Instruction.*—Charges asserting that there could be no recovery if the deceased caused the bad air in the mine by running the air compressor hot while he was in charge of it, and after being warned of the danger of doing so went into the mine half a mile to the place where he met his death, with opportunity to test the air on his way there, and his opportunity to ·ascertain the condition of the air in the mine, was superior to that of the master mechanic, and notwithstanding this he negligently went to said point and thereby proximately contributed to produce his death. should have been given, the action being against the mine owner for the death of the employee from gas in the mine, based on the negligence of the master mechanic in ordering deceased into the mine with assurance of his safety when it contained a large and dangerous quantity of gas.

16. *Same; Action; Variance.*—Where the gravamen of the complaint was that the master mechanic of the defendant negligently ordered plaintiff's intestate to go down into a mine which contained a large and dangerous quantity of gas, and which.caused intestate's death, the defendant was entitled to instruction that if the gas which caused his death was confined in iron pipes in the mine when he was ordered and went into the mines, and was released after he went in by his own action in turning a cock, he could not recover, on the ground of variance.

17. *Negligence; Instruction.*—A charge asserting that the plaintiff cannot recover, if, under the evidence, it is a mere matter of conjecture whether deceased's death was or was not due to defendant's negligence is misleading in the use of the words, "or was not" and ˙hence. properly refused.

18. *Same; Applicability to Evidence.*—A charge asserting that if the jury were satisfied that the deceased knew and appreciated the danger of going to the point in the mine where he met his death,. there could be no recovery, though they further believe that the master mechanic ordered him to go there, and told him he thought it would be safe for him to do so, was objectionable as qualifying· the assurance of safety without regard to the tendency of the evidence in respect to the absolute form of the assurance, where the evidence authorized a finding either that the master mechanic told the deceased he thought it was safe, or that he told deceased, without qualification, that it would be so.

19. *Charge of Court; Considered as a Whole.*—A charge should be· considered as a whole in determining whether parts of it were objectionable.

20. *Same; Repetition.*—The court is under no obligation to give requested instructions which are mere duplicates of those already given.

21. *Same; Applicable to Pleading.*—A charge on contributory negligence not confined in hypothesis to the negligence pleaded is properly refused.

22. *Same; Invading Province of Jury.*—A charge asserting that the plaintiff cannot recover if the evidence in the case is as consistent with the absence of defendant's negligence as it is with the existence· thereof, is invasive of the province of the jury.

23. *Same; Argumentative Instruction.*—Charges asserting that in determining certain questions of negligence and contributory negligence, the jury can consider or will look to certain facts if they be· facts, together with all the other evidence are argumentative and error cannot be predicated on their refusal.

(Dowdell, C. J., not sitting.)

APPEAL from Etowah Circuit Court.

Heard before Hon. JOHN W. INZER.

Action by Pat H. Heald, as administrator, against the Alabama Consolidated Coal & Iron Company, for the death of his intestate. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The rulings as to pleadings and evidence appear with sufficient certainty in the opinion. For the complaints in the case, see former report thereof in 154 Ala. 580, 45 South. 686. Count 5 added by way of amendment is substantially the same as count 3, set out in the former appeal.

The charges referred to in the opinion as given for the defendant are as follows:

(48) "The court charges the jury that the plaintiff in the case cannot recover for any negligence except that of J. G. Dunn, and unless they are reasonably satisfied from the evidence that Dunn failed to exercise such care and prudence as a person of ordinary care and prudence would have exercised under like circumstances, and that such failure on the part of Dunn proximately caused Heald's death, then their verdict must be for the defendant."

(51) "The court charges the jury that all the law of Alabama requires of Dunn as defendant's agent was to exercise such care to guard the safety of plaintiff's intestate as a man of ordinary prudence would have exercised under like circumstances, and if the jury believe from the evidence that a man of ordinary care and prudence, situated as Dunn was on the night of Heald's death, would have considered it safe to go into defendant's mine, then their verdict must be for the defendant, even though Dunn ordered Heald to go into the mine, and also told him at the time that it was safe for him to do so."

Charges refused to the defendant:

(10) "The court charges the jury that if plaintiff's intestate created or caused the bad air in defendant's mine by running the air compressor, of which he was in charge, hot, and thereby rendering the compressed air sent into the mine foul and impure, and said intestate, after being warned of the danger of doing so, went into the mine and traveled therein a distance of about one-half mile to the point where he met his death, with opportunity to test the air in the mine on his way to said point, and notwithstanding this plaintff's intestate negligently went to said point, and these acts, if plaintiff's intestate did them, proximately contributed to produce his death, plaintiff cannot recover."

[Alabama Consolidated Coal & Iron Co. v. Heald, Admr.]

(16) "The court charges the jury that if plaintiff's intestate created or caused the bad or foul odor in defendant's mine by running the air compressor hot while he was in charge thereof, thereby rendering the compressed air foul and impure sent into the mine, and said intestate, after being warned of the danger of doing so, went into the mine, and traveled therein a distance of about one-half mile to the point where he met his death, with the opportunity to test the air in the mine on his way to said point, and his opportunity for knowing or ascertaining the condition of the air in defendant's mine was superior to that of Dunn, and notwithstanding this plaintiff's intestate negligently went to the point in said mine where he met his death, and thereby proximately contributed to produce his death, then plaintiff cannot recover in this action."

(13) "The court charges the jury that, if they are reasonably satisfied from the evidence that the matters set up in defendant's amended plea 14 are true, then their verdict must be for the defendant."

(18) "The court charges the jury that, if the death of Heald was proximately caused by the joint negligence of said Heald and the defendant, plaintiff cannot recover in this case."

(20) "The court charges the jury that the plaintiff cannot recover in this case if, under the evidence, it is merely a matter of conjecture, surmise, speculation, or supposition whether Heald's death was or was not due to the negligence of the defendant, or of some employee for whose acts or omissions defendant was responsible."

(21) "The court charges the jury that the plaintiff cannot recover in this case if the evidence in it is as consistent with the absence of defendant's negligence as it is with the existence of such negligence."

(11) "The court charges the jury that, if they are reasonably satisfied from the evidence that plaintiff's intestate knew and appreciated the danger of going to the point in defendant's mine where he met his death, then plaintiff cannot recover in this case, and their verdict must be for the defendant, although the jury further believe that Dunn ordered him to go to said point, and told him he thought it would be safe for him to do so."

(9) "The court charges the jury that, if they are reasonably satisfied from the evidence that Heald went to a point in defendant's mine where he met his death with knowledge of the danger arising from such undertaking, plaintiff's intestate assumed the risk, and plaintiff cannot recover in this action."

(5) "The court charges the jury that if they believe from the evidence that the foul air in defendant's mine was the proximate cause of Heald's death, and not any order that might have been given him by Dunn, their verdict must be for the defendant."

(4) "The court charges the jury that in ascertaining whether Dunn was negligent in giving Heald the order to go into the mine, if they find such order was given, the jury can consider, together with all the other evidence in the case, the following facts and circumstances, if they find such facts and circumstances to exist: That the mine had been operated for a long time prior thereto without accident or injury to those working in the mine on account of gas or foul air, and that Horace Williams, an old, experienced miner, had just come out of the mine, and voluntarily went back into the mine with Heald to continue work, and that Heald himself, who had, prior to that night, worked in defendant's mine for several months, and who had been on the ground up to the time of his going into the mine, did

not object to or protest against going into the mine, and if the jury believe that Dunn exercised such care and prudence in the premises as a person of ordinary intelligence and prudence would have exercised under like circumstances, then their verdict must be for the defendant."

(22) "The court charges the jury that in determining whether or not Dunn was guilty of negligence, in ordering Heald into the mine, if he did order him there, they will look to the fact, if it be a fact, that Heald was acquainted with the situation there that night, and knew that parties had come out of the mine on account of the air, and to the further fact, if it be a fact, that Heald went into the mine without protest or objection of any kind, and to the further fact, if it be a fact, that Horace Williams, an old, experienced miner, went into the mine at the same time with Heald, without orders from anybody and voluntarily; and if, from these facts, together with all the other evidence in the case, they are reasonably satisfied that Dunn exercised ordinary care and prudence when he gave the order, their verdict must be for the defendant, although Heald lost his life in going into the mine in obedience to the order."

(26) "The court charges the jury that unless Dunn, at the time he is said to have ordered Heald to go into the mine, knew or had reason to believe that the compressed air sent into the mine had become impure by becoming heated, then their verdict must be for the plaintiff."

(1) "The court charges the jury that, if they believe from the evidence in this case that plaintiff's intestate had, as compared with Dunn, an equal or better opportunity to see and know the extent of the danger of going into the mine, then said intestate would have no right to rely upon any assurance of safety on the part of said

[Alabama Consolidated Coal & Iron Co. v. Heald, Admr.]

Dunn, if they find such assurances were given or made, and if, under such circumstances, plaintiff's intestate voluntarily went into said mine, then there can be no recovery in this case."

(2) "The court charges the jury that in this case there can be no recovery by the plaintiff unless the jury find that Dunn was guilty of negligence which proximately caused the death of plaintiff's intestate, and if the jury believe from the evidence that said intestate had an equal or better opportunity to see and know the extent of danger of going into the mine than said Dunn had, then plaintiff cannot recover."

(3) "The court charges the jury that if they believe from the evidence that plaintiff's intestate was employed to work on the outside of defendant's mine, and his duties did not require him to go into the mine, and said intestate had, as compared with said Dunn, an equal or better opportunity to see and know the extent of the danger of going into the mine, then their verdict must be for the defendant, even though they belive that Dunn ordered him to go into the mine, and told him at the time of the order that he thought it was safe to go into the mine."

(24) Set out in the opinion.

(27) "If you believe from the evidence that at the time Dunn gave the order, if you find that he gave it, defendant's mine did not contain a large and dangerous quantity of suffocating gas, but that such gas was confined in the iron pipes carrying the compressed air into the mine, then you cannot find for the plaintiff in this case."

(28) "The court charges the jury that if they are reasonably satisfied from the evidence that Heald met his death by foul air or gas escaping from the pump after he had reached it, and not because the mine contained

a large and dangerous quantity of suffocating gas at the time the alleged order was given, then they cannot find for the plaintiff in this case."

(29) "The court charges the jury that, unless they are reasonably satisfied from the evidence in this case that defendant's mine contained a large and dangerous quantity of suffocating gas at the time Heald went into it, then they cannot find for the plaintiff in this case, although they are reasonably satisfied that Dunn ordered Heald to go into it, and at the time of such order the iron pipe carrying compressed air into the mine contained foul air or gas."

Dortch, Martin & Allen, for appellant. The court erred in sustaining demurrers to the statute of limitation.—*King v. Avery,* 37 Ala. 169; *Jones v. McPhipps,* 82 Ala. 105; *Steiner Bros. v. First Nat. Bank,* 115 Ala. 387; *Winston v. Mitchell,* 93 Ala. 561; *Turner v. White,* 97 Ala. 550; *Barker v. Anniston Ry. Co.,* 92 Ala. 314; *Nelson's Case,* 139 Ala. 578; 45 So. 690; *Freeman's Case,* 45 So. 898; 158 U. S. 285; 58 Ill. App. 277; 170 Ill. 163; 189 Ill. 273; 182 Ill. 359; 107 Ia. 680; 106 S. W. 177; 72 N. E. 169; 77 N. E. 266; 63 N. W. 507; 85 N. W. 2; 54 S. E. 377; 42 S. E. 427; 56 Atl. 387; 61 S. W. 707; 105 S. W. 746; 95 Tenn. 615; 86 Pac. 1123; 40 So. 739; 113 N. W. 408. Counsel discuss and cite authority in support of the proposition that the amendment worked a change from the common law action to an action under the Alabama statute, which is not permissible. The court erred in admitting evidence that Dunn told deceased that he thought it was safe to go into the mine, as this was an independent ground of liability from that stated in the complaint.—1 LeB. on M. & S., Sec. 449; *L. & N. v. Markee,* 103 Ala. 160. The authority shown in Dunn was to give orders only, and not to give assurances of

safety.—*M. & O. v. George,* 94 Ala. 219; *Hammond's Case,* 93 Ala.118; *Postal T. Co. v. Hulsey,* 115 Ala. 196; 1 LeB. on M. & S., Sec. 448. The court's definition of negligence was too wide and required a too high degree of care.—*A. C. G. & A. Ry. Co. v. Bullard,* 47 So. 578. The court erred in refusing to give charge 10.—113 Ala. 274; 117 Ala. 413. On the same authority the court erred in refusing to give charge 13. The court erred in refusing to give charge 18.—131 Ala. 269; 4 A. & E. Enc. of Law, 26; 58 Am. Dec. 191. The court erred in refusing to give charge 5.—*Ala. C. C. & I. Co. v. Hammond,* 47 So. 348. On the same authority the court erred in refusing charge 26. The court erred in refusing charge 27.—1 LeB., Secs. 356 and 405. The court erred in refusing charge 24.—*A. G. S. v. McWhorter,* 47 So. 84. Counsel discuss the other charges given and refused, but without citation of authority.

DENSON & DENSON, for appellee. Assignments of error 1 to 11, and 56 and 57, were all disposed of on the former appeal in this case.—*Ala. C. C. & I. Co. v. Heald,* 45 So. 690; *Townes v. Dallas M. Co.,* 154 Ala. 612; *A. B. & A. Ry. Co. v. Wheeler,* 154 Ala. 530; *Ala. T. & I. Co. v. Hall,* 44 So. 594. The answers were responsive to the question, and the question was not objected to which was sufficient to uphold the action of the court.—*M. J. & K. C. Ry. Co. v. Bromberg,* 141 Ala. 280. In any event, the evidence was legal in each instance.—*So. Ry. Co. v. Guyton,* 122 Ala. 241; *Pioneer M. & M. Co. v. Smith,* 150 Ala. 359; *A. G. S. v. Davis,* 119 Ala. 585. The portion of the court's oral charge made the basis of these two assignments of error consists of at least three propositions, two of which are unquestionably correct, which fact renders the assignment unavailing.—*McDonald v. Mont. St. Ry. Co.,* 110

Ala. 177; *L. & N. R. R. Co. v. Hine,* 121 Ala. 239; *M. &
O. R. R. Co. v. George,* 94 Ala. 222; *Postal Telegraph
Co. v. Hulsey,* 132 Ala. 461. When construed in con-
nection with the other portions of the charge, and with
refernce to the evidence the part excepted to is unob-
jectionable, and hence will not support an assignment
of error.—*Mont. & Eufaula R. R. Co. v. Stewart,* 91 Ala.
427; *L. & N. R. R. Co. v. Orr,* 94 Ala. 605; *R. & D. R.
R. Co. v. Weems,* 97 Ala. 273; *A. G. S. R. R. Co. v. Hill,*
93 Ala. 522. The charge stated the law correctly. The
fact that it was too broad or too narrow as contended
by counsel will not work a reversal.—*Williamson Iron
Co. v. McQueen, A'dm'r,* 144 Ala. 276; *L. & N. R. R. Co.
v. Orr,* 94 Ala. 605; *B'ham Ry. & Elec. Co. v. Bowers,*
110 Ala. 331; *Reiter-Connolly Mfg. Co. v. Hamlin, A'dmr.*
144 Ala. 216-217; *Ala. City, G. & A. Ry. Co. v. Bullard,*
47 So. 579-580. The most that can be said against the
charge is that it calls for an explanatory instruction;
this the defendant asked and the same was given by the
trial court. The charges whose refusal is made the
basis of these assignments of error do not conform to
the pleas upon which they are based and for this rea-
son were properly refused.—*K. C. M. & B. R. R. Co.
v. Simmons,* 40 South. 574. The substance of the
charges bearing on the issue was embodied in other in-
structions given at defendant's request.—*K. C. M. &
B. R. R. Co. v. Thornhill,* 141 Ala. 234; *L. & N. R. R.
Co. v. Hurt,* 101 Ala. 48-48; *A. G. S. R. R. Co. v. Bur-
gess,* 116 Ala. 515; *K. C. M. & B. R. R. Co. v. Burton,*
97 Ala. 260.

EVANS, J.—This is the second appearance of this
cause in this court, on appeal taken by the defendant.
The original complaint was composed of only one count,
the foundation to which was negligence of the master

(defendant) in not furnishing the servant (plaintiff's intestate) a reasonably safe place wherein to perform the duties required of him as such servant. At the first trial count No. 3 was added by way of amendment. This count is founded upon subdivision 3 of the employer's liability act (Code 1896, § 1749).

The point of supreme importance litigated on the former appeal was whether or not the amended count fell within the lis pendens, so as to cut off, or render inapplicable, the defense of the statute of limitations. Perhaps no cause has ever been more ably represented or briefed than was this, on the first appeal; and we are quite sure that no cause has ever been given more careful consideration in this court, than was accorded this one, by the court en banc, on that occasion. After the point at issue had been debated, in all its phases, in consultation, and consideration as above referred to had been given the cause by the court, the majority of the Justices reached the conclusion (expressing it in an opinion by Anderson, J.) that the amendment came within the lis pendens, and decided the point against the appellant; while the three remaining Justices, in an opinion by Dowdell, J., took the opposite view.— *Alabama, etc., Co. v. Heald,* 154 Ala. 580, 45 South. 686. Now, the identical question determined against the appellant on the first appeal is again presented for decision. Counsel for appellant have filed an elaborate and able brief, in support of their contention that the conclusion reached by the court on the former appeal is erroneous and should be departed from.

We recognize the fact that the statute frees the court from the "law of the case" rule, and affords the privilege of departing from a former ruling if the court should become convinced of error in that ruling.—Code 1907, § 5965. But after giving the brief and argument

[Alabama Consolidated Coal & Iron Co. v. Heald, Admr.]

of appellant that consideration to which it is entitled, and after examining the authorities, the court is not convinced that its former ruling is unsound or should be repudiated.

This conclusion finds support in the fact that, since the promulgation of the former decision, it has been several times cited and followed by this court.—*Townes v. Dallas Mfg. Co.,* 154 Ala. 612, 45 South. 696; *A. & B. A. R. v. Wheeler,* 154 Ala. 530, 46 South. 262; *Central of G. Ry. Co. v. Sturgis,* 159 Ala. 222, 48 South. 810; *Ala. Const. Co. v. Watson,* 158 Ala. 166, 48 South. 506. See, also, on the subject of amendments relating back, *Alabama Terminal, etc., Co. v. Hall,* 152 Ala. 262, 44 South. 592.

- Now, should we not recognize and appreciate the necessity for stability and uniformity in the construction and interpretation of the law?

"It is too evident to require discussion that the interests of the state and of the individual and the proper administration of justice require that there should be settled rules in these matters."—26 Am. & Eng. Ency. Law, 160; *Snider v. Burks,* 84 Ala. 57, 4 South. 225; *Morton's Case,* 79 Ala. 616; *Herstein v. Walker,* 85 Ala. 37, 4 South. 262.

The court adheres to its former ruling upon the point sub judice.

We deem it unimportant that the court allowed an amendment, by the addition of count 5 to the complaint. It neither added to nor detracted from, the complaint as it stood when this count was added. It is identical with count 3 of the complaint. It may be that it would have been better practice to retry the case on the settled pleadings; these having been pronounced sufficient by this court. But there was no prejudicial error in refusing to strike it. In *Huggins v. Southern Ry. Co.,*

148 Ala. 153, 41 South. 856, the court said: "It would be error without injury to deny the amendment, if it was but a repetition of what was in the original complaint." The rule works both ways. If the trial court allows an amendment, it is not reversible error, even though the appellate court might think the amendment unnecessary.— *Postal, etc., Co. v. Likes,* 124 Ill. App. 459, 466; *Com. Nat. Bank v. Gibson,* 37 Neb. 750, 56 N. W. 616.

Finally, the plaintiff amended the complaint by withdrawing all the counts except those numbered 3 and 5, and the cause was tried on these counts, and on the pleas of the general issue, contributory negligence, and assumption of risk.

It will probably serve a useful purpose if we bring the negligence relied upon in the complaint immediately in view; and this we do by transcribing the averments, in this respect, contained in count 3: "Plaintiff avers the death of his intestate to have been proximately caused by reason of the negligence of James Dunn, a person in the service or employment of the defendant, to whose orders or directions plaintiff's intestate, at the time of his death, was bound to conform and did conform, and his death resulted from him having so conformed, which negligence consisted in this: The said Dunn negligently ordered plaintiff's intestate to go down into the defendant's mine at a time when said mine contained a large and dangerous quantity of suffocating gas."

The plaintiff's intestate lost his life in defendant's mine during the night of April 11, 1905. He was employed by the defendant to run its air compressor. It was also shown that James Dunn was defendant's master mechanic at the time, and that the intestate was subject to Dunn's orders. The compressor compressed air into a receiver (a large tank or boiler) located on the

[Alabama Consolidated Coal & Iron Co. v. Heald, Admr.]

outside of the mine, and from the receiver the air was distributed by pipes through the mine and was utilized as a motive power, in running pumps, drills, etc., in the mine. The testimony tended to show that the receiver was extraordinarily hot—as hot as a cook stove—just before, and at the time the deceased went into the mine. It was also shown that such heated condition of the receiver "would indicate to ·the master mechanic that there was something wrong; it would indicate that it was afire." It was also shown, by witness Steele, that: "If the receiver was 'on fire' it would produce poisonous gas. This poisonous gas would go out where-ever you should happen to open it first. It would be opened on the inside of the mine, and when opened that gas would be distributed through the mine." It was shown that the gas produced (if the receiver was as hot as stated) would be carbonic dioxide gas, and that this gas is suffocating. Steele's testimony further tended to show that if the receiver was as hot as a cooking stove, such degree of heat would indicate to the master mechanic that the air that was being forced into the mine was reduced to the poisonous gas—carbonic dioxide.

Dunn, defendant's master mechanic, was near the receiver, and the evidence tends to show that he saw it, and was cognizant of its superheated condition at the time.

Plaintiff's witness Enslen testified: "I had never seen the receiver so hot as it was that evening. I was present at the time Mr. Heald (deceased) went ·into the mine. I heard Mr. Dunn tell him to put on his boots and go in the mine and start the pump; as well as I remember that is what he said." At this juncture, the bill of exceptions recites plaintiff's counsel asked the witness this question, "State what Dunn told him,"

and witness in answer said: "I don't remember. It is my best recollection he said it was perfectly safe."

The court's action in overruling the motion to exclude this answer may be justified upon two or more grounds: In the first place, no objection was interposed to the question, and the answer is responsive.—*Mobile, etc., R. Co. v. Bromberg,* 141 Ala. 258, 280, 281, 37 South. 395. Again, it was a part of the res gestæ of the intestate's going into the mine and of the order given to him to go into the mine. Furthermore, in view of the pleas of contributory negligence and assumption of risk filed by defendant, the testimony was competent and was properly allowed.—*Southern Ry. Co. v. Guyton,* 122 Ala. 231, 25 South. 34; *Pioneer, etc., Co. v. Smith,* 150 Ala. 356, 43 South. 561; *Southern Ry. Co. v. Howell,* 135 Ala. 639, 34 South. 6.; *Tennessee, etc., Co. v. George,* 161 Ala. 421, 49 South. 681. This disposes of the twelfth, twenty-fifth, and twenty-sixth grounds of assignment of errors.

Witness Steele testified that he had been a machinist 15 or 20 years; that he had once been in the employment of the defendant and had charge of its machinery at the mine two years. "I know what the air receiver is, there at the mine. It is a big boiler or tank at the mouth of the mine, that the air is pumped into it before it goes into the mine. If that receiver was as hot as a cook stove, it would indicate that there was something wrong. It would indicate that it was afire."

Plaintiff's counsel then asked witness this question: "Now, what is it in the receiver that would be afire?" And the witness answered: "Why, it might be oil in there; most of the oil that is used to oil the compressor stops in the receiver. If the receiver was on fire, why it would produce gas in combustion without oxygen. It would produce poisonous gas. The poisonous gas

would go out wherever you happened to open it first. It would be opened on the inside of the mine, and when opened it would be distributed inside the mine. Mr. Dunn was master mechanic at defendant's mine. I held the same position that Mr. Dunn held at this mine for nearly two years, and before the accident to Heald. I have some knowledge of chemistry. If you bring an inflammable substance in contact with air, and that air is inclosed in a receiver as the one here used, and if the substance catches afire in the receiver, and burns to such an extent that the receiver is as hot as a cook-stove, that would form carbonic dioxide. This kind of gas is suffocating." Plaintiff's counsel here asked the witness: "Now, Mr. Steele, if the receiver was as hot as a cook stove, would that indicate to the master mechanic that the air that was being forced into the mine had been reduced to this poisonous gas of which you spoke a few moments ago?" Defendant objected to this question. That the testimony called for was relevant, material, and legal matter seems to be a proposition to demonstrate the correctness of which argument is unnecessary. But it is insisted that the question called for expert testimony, and that the witness was not shown to be qualified to testify as an expert.

To entitle a witness to answer as an expert, it is true "he must, in the opinion of the court, have special acquaintance with the immediate line of inquiry; yet he need not be thoroughly acquainted with the differentia of the specific specialty under consideration. If this were necessary, few experts could be admitted to testify; certainly no courts could be found capable of determining whether such experts were competent. A general knowledge of the department to which the specialty belongs would seem to be sufficient."—1 Whart. on Ev. (2d Ed.) p. 386, § 439; *Washington v. Cole,* 6

Ala. 212; *Gulg City Ins. Co. v. Stephens,* 51 Ala. 121, 123. Furthermore, the sufficiency of Steele's experience and knowledge of the subject inquired about was a matter addressed to the discretion of the court, and the ruling in respect thereto should not be here disturbed unless it clearly appears to have been erroneous.— Authorities supra. See, also, *Parrish's Case,* 139 Ala. 16, 42, 36 South. 1012; *Braham's Case,* 143 Ala. 28, 41, 38 South. 919. We are of the opinion, and hold, that the evidence that Steele was an expert was prima facie sufficient, and that the court cannot be put in error for allowing the question.—*Washington v. Cole, supra;* *Weaver v. Ala. Coal Min. Co.,* 35 Ala. 176, 183, 184.

The objection that the question called for matter for the determination of the jury is not meritorious; neither is there merit in the motion to exclude the answer of the witness to the question.

After testifying that the conditions referred to above should indicate to the master mechanic, Dunn, "that there was something radically wrong, and if it were allowed to proceed to a certain point it would produce carbonic dioxide gas," the witness Steele was asked this question, "Would it be safe, Mr. Steele, to go down into the mine when that condition existed?" We have passed upon the ruling of the court in respect to the witness' competency as an expert; but it is argued that the matter here referred to (the safety or not of going into the mine) was one to be determined by the jury after the witness had informed them of the presence of carbonic dioxide gas in the mine, and that it was poisonous and suffocating, and that the witness should not have been allowed to substitute his judgment for that of the jury, on the question.

It is true that the question of safety vel non of going into the mine was to be determined by the jury;

but we cannot agree with counsel that the testimony called for was not within the rule of opinion evidence. The jury was not concluded by the opinion of the witness, but it was testimony to be considered by them in the reaching of their conclusion. There was no error in the ruling.

The foregoing considerations dispose of all the assignments of error in respect to the rulings of the court on the admissibility of testimony, and we come now to consider the grounds of error insisted upon, which challenge the correctness of certain portions of the oral charge of the court excepted to, and the rulings of the court in refusing written charges requested by the defendant.

The court, in its general charge, amongst other things, instructed the jury as follows: "Now, gentlemen, I may state a few general principles to you before I go further: (Mere negligence which gives a right of action is the doing of an act, or the omission of an act, which results proximately in damage to another, without any intent to do wrong or cause injury [and it must be in a case where the defendant owes the injured party—the deceased man in this case—a duty, owes him a duty.] Negligence is any lack of carefulness in one's conduct to whom he owes a duty, which in doing or omitting to do proximately contributes to the injury of another in his person or property without intent to inflict such injury. That is simple negligence, gentlemen), and simple negligence is the only negligence charged in either of these counts." The defendant excepted to the whole of the above extracts embraced within parentheses, and also separately to that inclosed within brackets.

The argument against the charge is founded upon the case of *Alabama City, G. & A. Ry. Co. v. Bullard*, 157

Ala. 618, 47 South. 579, wherein a somewhat similar charge was criticised as being "inaccurate and too broad," and as furnishing no standard by which to measure the degree of care by law required to be exercised. The court said: "We prefer as a more accurate definition of negligence, assuming the existence of a duty, that stated in Words & Phrases, vol. 5, p. 4744: 'The failure to do what an ordinarily prudent person would have done under the circumstances, or the doing of that which an ordinarily prudent person would not have done.'"

The court did not in that case expressly declare that giving of the charge constituted reversible error; a preference simply was expressed for the definition quoted from Words and Phrases. And when we consider that case in connection with the case of *Reiter-Connolly Mfg. Co. v. Hamlin*, 144 Ala. 192, 202, 216, 40 South. 280, of the existence of which case the court is presumed to have been cognizant, we are led to believe that the court did not intend to declare the charge as constituting reversible error. In the latter case the court orally charged the jury that: "Negligence is the wrongful doing of an act or the wrongful omission to act, which results in damages, but without intent to do wrong or cause damage. Under this definition it is not necessary, nor does the law require that an intent to do wrong, or an intent to cause injury, should be shown." And of this instruction our court said: "In considering a part of the charge of the court, it must be taken in connection with the remainder of the charge. Under the facts in this case, and in connection with the entire charge of the court, we cannot say that there was reversible error in this definition of 'negligence.' While it is not an exhaustive definition, yet, on a review of the numerous attempts of courts and text-writers to de-

fine negligence, it seems to be almost impossible to give a definition in one sentence which will cover the conditions of every case." But, whatever may have been or might be the ruling of the court in respect to the charge constituting reversible error if it were isolated, we find that the instant case falls directly within the principle adhered to in the last case quoted from, that the charge excepted to must be considered in connection with the remainder of the charge and the facts; and when so considered, that it does not form the basis for reversible error. Moreover, the court, at the request of the defendant, gave charges 48 and 51, which conform to the definition of negligence laid down and as preferred in the case of *Alabama City, etc., Co. v. Bullard, supra.* These relieved the charge given of misleading tendency affecting defendant, and the court is of the opinion that reversible error cannot be predicated of the parts of the oral charge under review.

A large number of charges were given for the defendant, and to it a large number were refused. As we shall refer to the fact that some of the refused charges are substantial duplicates of some that were given, we will quote in advance from the case of *L. & N. R. R. Co. v. Hurt*, 101 Ala. 34, 49, 13 South. 130, 134, what was there said by the court in respect to duplicate charges: "Section 2756 of the Code (1886), which provides that 'charges moved for by either party in writing must be given or refused in the terms in which they are written,' was not intended to license either party to move for charges ad infinitum. A court will not be in error for refusing charges which are mere repetitions of charges which have been given, and a mere variation in the use of the words, which 'hideth counsel,' and which in no way change the meaning or assert different principles from those given, will not affect the rule."

If the court had given charges 10 and 16, requested by the defendant, such action of the court might not have constituted reversible error, though it is not necessary to decide this point. Each of these charges contains the hypothesis that, if "plaintiff's intestate negligently went to said point"; but neither of them contains any definition or standard by which the jury might determine whether or not the action, or the lack of action, on the part of the intestate, would constitute negligently going to "said point." Thus a question of law would have been submitted for the determination of the jury if the charges had been given.—*Herbert v. Hanrick,* 16 Alla. 581, 594; *Stanley v. Bank of Mobile,* 23 Ala. 652, 657; *Dickson Bros. v. Bamberger, Bloom & Co.,* 107 Ala. 293, 299, 300, 18 South. 290; *Doe v. Edmondson,* 145 Ala. 557, 567, 40 South. 505; *Strickland v. State,* 151 Ala. 31, 40, 44 South. 90; *Barlow v. Hamilton,* 151 Ala. 634, 638, 44 South. 657; *Jones v. State,* 79 Ala. 23, 25; *Miller's Case,* 107 Ala. 40, 58, 19 South. 37.

The charges sub judice differentiate from those held good in *Western Railway of Alabama v. Walker,* 113 Ala. 267, 22 South. 182, in that the charges in that case, while they contain the terms, "without fault or negligence," yet they set out in full the fact which, if found to be true, showed that the servants of the defendant company were guilty of no negligence. Moreover, in charges 58, 33, and 34, given for defendant, the propositions asserted in charges 10 and 16 are duplicated, and appear in a form more favorable to defendant than that in which they are stated in charges 10 and 16.

The criticism leveled at charges 10 and 16 is applicable also to refused charge 13. Moreover, the latter charge finds a substantial duplicate in charge 33, given at the defendant's request. Quære: Is not charge 13

misleading, upon the considerations and authorities adverted to in *Woodward Iron Co. v. Curl*, 153 Ala. 215, 228, 44 South. 969? See, also, in this connection, *A. G. S. R. R. Co. v. McWhorter*, 156 Ala. 269, 47 South. 84, 88 (headnote 15).

Without discussing the merits or demerits of charge 18, refused to defendant, the court is of the. opinion that it is a substantial duplicate of charge 33, given for the defendant, and that the defendant was not prejudiced by its refusal. The charge is also subject to the criticism, made of it by appellee's counsel, that the contributory negligence hypothesized. is not confined to that pleaded.

Charges 20 and 21 were properly refused to the defendant. Twenty is rendered misleading, if not positively vicious, by the alternative, "or was not," while 21 invades the province of the jury. Furthermore, the defendant was given full benefit of the principles sought to be stated in these charges, in given charges 32, 36, and 55.

While it was open to the jury to find from the evidence that Dunn told plaintiff's intestate that he thought it was safe, it was likewise open to them to find that Dunn told intestate, without any qualifications, that it would be safe to go into the mine; therefore charge 11 was well refused. The charge qualifies the assurance of safety, by the evidence authorized to be found to have been given to the intestate, without regard to the tendency of the evidence in respect to the absolute form of the assurance.

In *Southern Railway Co. v. Guyton*, 122 Ala. 231, 241, 25 South. 34, this court said: "An employee is held by the law to the use of ordinary care for his own safety; so that, if he voluntarily undertakes to do work attended with danger which is obvious, he impliedly

assumes the risk in its execution. It does not follow, however, that he is guilty of negligence in working merely because he knows the work to be dangerous without regard to the degree of danger and risk involved, nor unless it be of a degree which would ordinarily deter one of ordinary prudence from the undertaking" —citing *Woodward Iron Co. v. Andrews*, 114 Ala. 243, 21 South. 440; *Eureka Co. v. Bass*, 81 Ala. 200, 8 South. 216, 60 Am. Rep. 152. "The rule requiring the exercise of ordinary prudence applies in determining the question of negligence on the part of the plaintiff, and it also applies in fixing the charge of negligence upon the defendant, but with this additional consideration: That, in the matter of investigating a risk which is not plainly apparent in the nature of the work, the employer and employee do not always stand on the same footing, since the employee may to some extent rely upon the judgment of the employer, or of a superior in the same service. * * * This principle is applicable in this case, in connection with the plaintiff's testimony to the effect that the transaction in question was not dangerous." °

And so, in the instant case, we find from the evidence that plaintiff's intestate, in the presence of his superior, Dunn, was told by Enslen that it was not safe to go in the mine, and that Dunn immediately told the intestate to go ahead, that everything was all right. This was the only information in regard to the dangerous condition of the mine that the intestate had. It cannot be said, as matter of law, that this revealed the degree of danger at all, and certainly it cannot be said that it as matter of law revealed a degree of danger calculated to deter a person of ordinary prudence from the undertaking. And it would seem, under the circumstances, to be a harsh rule that would deprive the intestate of

[Alabama Consolidated Coal & Iron Co. v. Heald, Admr.]

any reliance on the judgment of the superior in the same service, Dunn. But that is the effect of the proposition as announced in charge 11.—*Kansas City, etc., Co. v. Thornhill,* 141 Ala. 215, 228, 37 South. 412; *Ala. Steel & Wire Co. v. Wrenn,* 136 Ala. 475, 494, 34 South. 970; *Pioneer, etc., Co. v. Smith,* 150 Ala. 359, 43 South. 561.

In addition to the fact that charge 9 pretermits all consideration of the order of Dunn to the intestate, if the jury should find that. Dunn ordered him to go into the mine, the charge is a substantial duplicate of charge 58, given for the defendant.

Reversible error cannot be predicated of the court's refusal to give charges 22 and 4. Each of them is argumentative.—*Salm's Case,* 89 Ala. 568, South 66; *Matthews' Case,* 100 Ala. 46, 14 South. 359; *Hawes' Case,* 88 Ala. 37, 7 South. 302; *Riley's Case,* 88 Ala. 188, 7 South. 104; *Snider v. Burks,* 84 Ala. 53, 4 South. 225; *East Tenn., etc., Co. v. Thompson,* 94 Ala. 634, 639, 10 South. 280.

The action of the court in refusing charge 5 does not constitute reversible error. It was calculated to mislead the jury, and called for. explanation. Charges possessing the vices named may be refused by the trial court without prejudicial error, "although on dissection they may assert legal propositons."—*Carter v. Chambers,* 79 Ala. 223; *L. & N. R. R. Co. v. Hall,* 87 Ala. 708, 723, 6 South. 277, 4 L. R. A. 710, 13 Am. St. Rep. 84; 2 Mayf. Dig. p. 574, § 228; Id., p. 573, §§ 207, 215; *Jones' Case,* 79 Ala. 23.

It is true that the evidence shows that the only noxious gas in the mine was that which was transmitted from the receiver into the mine, and it is also true that, unless Dunn, at the time he ordered Heald to go into the mine, knew, "or was in position, by the exercise of

reasonably prudent care, to know of the presence" of such gas (*Robinson Mining Co. v. Tolbert,* 132 Ala. 462, 466, 31 South. 519), negligence could not be predicated of the giving of the order; and it may be that charge 26 asserts a correct proposition, but this last point we do not determine, for the reason that, whether it does or not assert the law correctly, the court is fully persuaded that the defendant had the benefit of all that it was entitled to, in this respect, in given charges 30, 49, 50, and 59. "In the matter of investigating a risk which is not plainly apparent in the nature of the work, the employer and employee do not stand on the same footing, since the employee may to some extent rely upon the judgment of the employer, or of a superior in the same service."—*Southern Railway Company v. Guyton,* 122 Ala. 231, 241, 25 South. 34, 38; Dresser, Employers' Liability, p. 531.

Furthermore, in this case it cannot be said that the danger was open and obvious. To the contrary, knowledge of its existence depended, to some extent, upon technical knowledge. The proof shows that Dunn was the master mechanic, and it tends to show that the heated condition of the receiver would indicate to him that noxious gas was in the mine; but it cannot be said that the evidence tends to show that the heated condition of the receiver indicated to Heald that noxious gas was being transmitted into the mine. Therefore, the hyhopthesis of equal opportunity, contained in the charges, may be said to be abstract. But, however this may be, the law is that, if the danger is not patent, the master and servant are not equally chargeable with knowledge of its existence, although they may have equal opportunities to ascertain it. This is true for the obvious reason that the duties resting upon them to search for or discover it are not the same.—Dresser, Employers' Liability, 531.

[Alabama Consolidated Coal & Iron Co. v. Heald, Admr.]

As was said in *Pioneer Mining Co. v. Smith,* 150 Ala. 356, 359, 43 South. 561 (quoted approvingly from Bailey on Personal Injuries, § 899) : "Master and servant do not stand upon equal footing, even when they have equal knowledge of the danger. The position of the servant is one of subordination and obedience to the master, and he has the right to rely upon the superior skill of the master, and is not entirely free to act upon his suspicions of danger. If a servant, being ordered into a position, obeys and is injured, he will not be held to be guilty of contributory negligence, unless the danger is so glaring that a reasonably prudent person would not have entered into it."

Manifestly, under the charges sub judice, Nos. 1, 2, and 3, the assurance of safety extended by Dunn to Heald would have been of no avail to Heald. The charges eliminating the right of reliance, to any extent, by Heald upon the judgment of his superior, the assurance in short amounted to nothing.

Upon the foregoing considerations and authorities the court holds that the charges mentioned are either positively bad or misleading in their tendencies, and that the trial court committed no error in refusing them.— *Reiter-Connolly Mfg. Co. v. Hamlin* (charge 2 given for plaintiff) 144 Ala. 193, 40 South. 280.

Charge 24, refused to defendant, is as follows: "The court charges the jury that if they believe from the evidence in this case that the gas or impure air which caused Heald's death, if the jury find that his death was so caused, was confined in the iron pipes which extend from the air compressor and receiver into the mine, and which carried the compressed air into the mine, and that such gas or impure air was released by Heald at the pump in his efforts to fix the pump, and that Heald's death resulted therefrom, then their verdict must be for the defendant."

[Alabama Consolidated Coal & Iron Co. v. Heald, Admr.]

The brief of appellant begins the argument in support of this charge in these words: "This charge raises the proposition that, if the mine did not contain a large and dangerous quantity of suffocating gas at the time Dunn is alleged to have ordered Heald to go into it, then plaintiff would not be entitled to recover because of failure to establish a material averment of the complaint. It also raises the proposition of a variance, provided the jury should find that Heald's death was caused by the foul air escaping from the pump after he had reached it and was attempting to fix it, for if this were the case then the allegation of the complaint as to the mine's containing a large and dangerous quantity of gas would not be established by the evidence."

This charge, in its final analysis, means that notwithstanding Dunn, at the time he ordered the intestate to go into the mine and adjust the pump, knew that the pipes in the mine were full of suffocating gas, which would, when released from the pipes, be dangerous to human life, and that it was liable to be released, in the effort to adjust the pump, still plaintiff could not recover. In other words, it seems to us the charge in effect asserts the proposition that, although the order was negligently given, and that in his effort to obey it plaintiff's intestate lost his life by inhaling suffocating gas that was in the mine, yet there could be no recovery. The argument of appellant, as stated, proceeds upon the theory that proof that gas was in the pipes located in and running through the mine cannot be construed as supporting the averment of the complaint that "said mine contained a large and dangerous quantity of suffocating gas." This is indeed a literal and strict interpretation of the complaint, and one, we think, too subtle for practical purposes in the administration of the law. To illustrate: According to the theory of appel-

lant, if the allegation had been that the mine contained a large and dangerous quantity of dynamite or powder, and the subtance was found in the mine, but incased in a keg or barrel, there would be a fatal variance between averment and proof. This, it must be conceded, would be too unsubstantial for recognition by the courts, in the administration of justice. "Where a description in the pleading and that in the proof are not repugnant, but are the same as far as the proof goes, and the proof is not of another and different location from that set out in the pleading, there is no variance."—22 Ency. Pl. & Pr. 589. The charge was properly refused.

Charges 27, 28, and 29, refused to defendant upon the considerations above adverted to, were also properly refused.

Construing that part of the oral charge of the court, the correctness of which is challenged by the sixtieth ground in the assignment of errors, in connection with the remainder of the oral charge on the same subject, we fail to find therein reversible error.—*Montgomery & Eufaula R. R. v. Stewart,* 91 Ala. 421, 427, 8 South. 708; *Postal, etc., Co. v. Hulsey,* 132 Ala. 444, 461, 31 South. 527.

The grounds of error assigned, covering the refusal of the court to grant a new trial, are disposed of in the discussion which has gone before.

No reversible error having been found, the judgment of the court below must be affirmed.

Affirmed.

SIMPSON, MAYFIELD, and SAYRE, JJ., concur.

The foregoing opinion in this cause was prepared by Justice Denson, before his retirement as Associate Justice, and, having been adopted in consultation, it is now announced as the opinion of the court.

[Alabama Consolidated Coal & Iron Co. v. Heald, Admr.]

ANDERSON, J. (dissenting).—I think the trial court committed reversible error in refusing charge 24, requested by the defendant. It was not abstract and hypothesized a state of facts, which, if true, would create a variance fatal to the averment of the complaint.

The gravamen of the complaint was that Dunn negligently ordered the intestate to go down in the mine, which contained a large and dangerous quantity of gas, and which caused the death of the intestate. If the death was caused by gas let into the mine, by the deceased, by opening the cock after he got down into same, his death did not result from the cause ascribed in the complaint. It is true the gas may have been in the pipes, and the pipes may have been in the mine, but so long as it was confined in the pipes, and did not escape therefrom until the intestate let it in, it could not be said that the mine contained a large and dangerous quantity of gas when intestate was ordered down, and that this death was so caused, as charged in the complaint. According to the hypothesis of the charge, the deceased would not have been killed but for the fact that he let the gas into the mine after he went down.

I therefore dissent, and McCLELLAN and EVANS, JJ., concur.

UPON REHEARING.

PER CURIAM.—Upon a reconsideration of this case, this court is of the opinion that so much of the oral charge as was excepted to, and which attempted to define negligence, was erroneous, in that it was too broad and held the defendant to too high a degree of care and responsibility. It pretermitted charging the defendant only with that degree of care as should have been exercised by an ordinarily prudent person under the

circumstances.—*Ala. City R. R. Co. v. Bullard,* 157 Ala. 618, 47 South. 578. Nor does it appear that this error was cured by other parts of the oral charge. As the definition given by the court amounted to error as distinguished from mere misleading tendencies, it was not susceptible of correction by giving requested written charges.

We also think that charges 10 and 16, refused to the defendant, should have been given.

The trial court also erred in refusing charge 24, requested by the defendant, for the reason set forth in the dissenting opinion of Anderson and McClellan, JJ.

For the errors heretofore mentioned, a rehearing must be awarded, the judgment of affirmance set aside, and the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., not sitting.